JS 44 (Rev. 06/17)                    **CIVIL COVER SHEET**                    2:18-1929

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| | |
|---|---|
| **I. (a) PLAINTIFFS**<br>UNITED STATES OF AMERICA | **DEFENDANTS** 18   1929<br>PTT PHONE CARDS, INC.<br>2417 Welsh Road, Philadelphia, PA 19114 |
| **(b)** County of Residence of First Listed Plaintiff<br>*(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant   Philadelphia<br>*(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF<br>THE TRACT OF LAND INVOLVED. |
| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)*<br>ANTHONY ST. JOSEPH, Assistant U.S. Attorney<br>U.S. Attorney's Office<br>615 Chestnut Street, Suite 1250, Philadelphia, PA 19106 | Attorneys *(If Known)* |

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

☒ 1   U.S. Government Plaintiff
☐ 3   Federal Question *(U.S. Government Not a Party)*
☐ 2   U.S. Government Defendant
☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*                    Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☒ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | | ☐ 371 Truth in Lending | | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 863 DIWC/DIWW (405(g)) | |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | ☐ 751 Family and Medical Leave Act | ☐ 865 RSI (405(g))' | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:**<br>☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Section 504(a) of the Communications Act of 1934
Brief description of cause:

| **VII. REQUESTED IN COMPLAINT:** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P. | **DEMAND $**<br>493,327.00 | CHECK YES only if demanded in complaint:<br>**JURY DEMAND:**   ☐ Yes   ☒ No |
|---|---|---|---|
| **VIII. RELATED CASE(S) IF ANY** | *(See instructions:)*   JUDGE | | DOCKET NUMBER |

| DATE | SIGNATURE OF ATTORNEY OF RECORD | |
|---|---|---|
| 5/8/18 | *Anty St Jos* | Anthony St. Joseph, Assistant United States Attorney |

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE MAY - 8 2018 |
|---|---|---|---|---|

## UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

**18   1929**

Address of Plaintiff: 615 Chestnut Street, Suite 1250, Philadelphia, PA 19106

Address of Defendant: 2417 Welsh Road, Philadelphia, PA 19114

Place of Accident, Incident or Transaction: _____
(Use Reverse Side For Additional Space)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes ☐   No ☑

Does this case involve multidistrict litigation possibilities?   Yes ☐   No ☑
*RELATED CASE, IF ANY:*
Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes ☐   No ☑

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☑ All other Federal Question Cases
   (Please specify) Section 504(a) of the Communications Act of 1934

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) _____

### ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, Anthony St. Joseph, counsel of record do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: 5/8/18      Attorney-at-Law      84901
                                       Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 5/8/18      Attorney-at-Law      84901
                                       Attorney I.D.#

CIV. 609 (5/2012)

MAY - 8 2018

**AB**

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CIVIL ACTION |
| v. | : | **18   1929** |
| PTT PHONE CARDS, INC. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.      ◯

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.      ◯

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ◯

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.      ◯

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)      ⊗

(f) Standard Management – Cases that do not fall into any one of the other tracks.      ⊙

| | | |
|---|---|---|
| 5/8/18 | Anthony St. Joseph | _ante st graf_ |
| **Date** | **Attorney-at-law** | **Attorney for** _Plaintiff_ |
| 215-861-8267 | 215-861-8618 | Anthony.StJoseph@usdoj.gov |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

MAY - 8 2018

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

United States of America,

        Plaintiff,

v.

PTT Phone Cards, Inc.,

        Defendant.

**18    1929**

Case No.

FILED
MAY 0 8 2018
By KATE BARKMAN, Clerk
Dep. Clerk

## COMPLAINT

The United States of America, through William M. McSwain, United States Attorney and Anthony St. Joseph, Assistant United States Attorney for this District on behalf of its agency, the Federal Communications Commission, brings this complaint and alleges on information and belief as follows:

### Introduction

1. This is a civil action brought by the United States pursuant to section 504(a) of the Communications Act of 1934, 47 U.S.C. § 504(a), to enforce a forfeiture order issued by the Federal Communications Commission on December 7, 2015, assessing a monetary forfeiture penalty against Defendant PTT Phone Cards, Inc. for violations of the statute and implementing federal regulations.

### Jurisdiction and Venue

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and 47 U.S.C. § 504(a).

3. Venue is proper pursuant to 28 U.S.C. §§ 1355(b), 1391(b), 1395(a), and 47

1

U.S.C. § 504(a), because Defendant's principal place of business is located within this district.

### Parties

4. Plaintiff is the United States of America.

5. The Federal Communications Commission ("FCC" or "Commission") is an agency of the Unites States that regulates intrastate, interstate, and foreign radio communications pursuant to the Communications Act of 1934, as amended, 47 U.S.C. § 151 *et seq.* ("Act"), and Title 47 of the Code of Federal Regulations, as amended, 47 C.F.R. § 0.1 *et seq.* ("Rules").

6. Defendant PTT Phone Cards, Inc. ("PTT"), is a telecommunications carrier based in Pennsylvania that is subject to regulation by the FCC. Defendant's principal place of business is located at 2417 Welsh Road, Philadelphia, Pennsylvania, 19114 (formerly located at 16 Old Ashton Road, Philadelphia, Pennsylvania 19152).

### Statutory and Regulatory Background

7. The Act and the Rules contain provisions establishing various authorization, contribution, and reporting requirements for telecommunications carriers.

8. Any "person who is determined by the Commission . . . to have . . . willfully or repeatedly failed to comply with any of the provisions of [the Act] . . . or of any rule, regulation, or order issued by the Commission under th[e Act] . . . shall be

2

liable to the United States for a forfeiture penalty." 47 U.S.C. § 503(b)(1).

9. Congress has defined "willful" for purposes of Section 503(b) of the Act as "the conscious and deliberate commission or omission of [an] act, irrespective of any intent to violate any provision of this Act or any rule or regulation of the Commission authorized by this Act." 47 U.S.C. § 312(f)(1).

10. Congress has defined "repeated" for purposes of Section 503(b) of the Act as "the commission or omission of [an] act more than once, or, if such commission or omission is continuous, for more than one day." 47 U.S.C. § 312(f)(2).

11. Congress has decreed that forfeitures assessed by the Commission shall be "payable into the Treasury of the United States" and shall be "recoverable . . . in a civil suit in the name of the United States." 47 U.S.C. § 504(a).

12. "In determining the amount of . . . a forfeiture penalty, the Commission . . . shall take into account the nature, circumstances, extent and gravity of the violation and, with respect to the violator, the degree of culpability, any history of prior offenses, ability to pay, and such other matters as justice may require." 47 U.S.C. § 503(b)(2)(E).

<u>Authorization Requirements for Telecommunications Carriers</u>

13. Section 214 of the Act prohibits any carrier from constructing, extending, or operating any line, and from engaging in transmission through any such line, "unless and until there shall first have been obtained from the [FCC] a certificate that the present or future public convenience and necessity require or will require,

3

the construction, extension, or operation of the line." 47 U.S.C. § 214.

14. Section 63.18 of the Rules also requires that any carrier seeking to provide international telecommunications services first apply to the FCC for authorization under section 214 of the Act. The applicant must provide the FCC with contact, ownership, and foreign carrier affiliate information, as well as certify that it will comply with FCC rules. The application requirement applies to carriers that resell the service of another authorized carrier and to domestic providers of wireless telecommunications service that provide international telecommunications service. *See* 47 C.F.R. § 63.18.

Contribution and Reporting Requirements of Telecommunications Carriers

15. Section 225 of the Act, which codifies Title IV of the Americans with Disabilities Act of 1990, requires that telecommunications carriers make available telecommunications relay services ("TRS") that enable persons with hearing and speech impairments to communicate by wire or radio with hearing individuals. *See* 47 U.S.C. § 225. The FCC has established a TRS Fund to reimburse TRS providers for the costs of providing such services. *See* 47 C.F.R § 64.604(c)(5)(iii). The TRS Fund is supported by contributions required of providers of interstate telecommunications services. *See* 47 U.S.C. § 225(d)(3)(B); 47 C.F.R. § 64.604(c)(5)(iii). Section 64.604(c)(5)(iii) of the Rules requires that "[e]very carrier providing interstate telecommunications . . . services shall contribute to the TRS Fund on the basis of end-user telecommunications revenues" and that the

4

contribution computations and other fees shall be made on the basis of the required filing annually of a Telecommunications Reporting Worksheet. *See* 47 C.F.R. § 64.604(c)(5)(iii)(A)-(B).

16. Telecommunications local number portability ("LNP") concerns the ability of consumers to "retain, at the same location, existing telecommunications numbers without impairment of quality, reliability, or convenience when switching from one telecommunications carrier to another." 47 C.F.R. § 52.21(n). Section 251(e)(2) of the Act requires that the cost of administering "number portability shall be borne by all telecommunications carriers on a competitively neutral basis as determined by the Commission." 47 U.S.C. § 251(e)(2). Section 52.32 of the Rules requires, among other things, that all telecommunications carriers contribute to the costs of number portability on the basis of their end-user telecommunications revenue for the prior year as set forth in the required filing annually of a Telecommunications Reporting Worksheet. 47 C.F.R. § 52.32.

17. Section 254 of the Act requires that "[e]very telecommunications carrier that provides interstate telecommunications services . . . contribute, on an equitable and nondiscriminatory basis, to the specific, predictable, and sufficient mechanism established by the Commission to preserve and advance universal service." 47 U.S.C. § 254(d). The Commission has established the Universal Service Fund ("USF"), which is funded by assessments on telecommunications providers. To gather the data necessary to calculate the assessments, section 54.711 of the Rules requires

that international telecommunications service providers, among others, annually file a Telecommunications Reporting Worksheet. 47 C.F.R. § 54.711.

<u>Regulatory Fees Requirements of Telecommunications Carriers</u>

18.   Section 9 of the Act directs the Commission to "assess and collect regulatory fees to recover the costs" of certain enumerated regulatory activities, including "enforcement activities, policy and rulemaking activities, user information services, and international activities." 47 U.S.C. § 159(a)(1)-(2).

19.   Pursuant to this directive, sections 1.1154 and 1.1157(b) of the Rules set forth schedules of annual regulatory fees that telecommunications carriers must remit to the FCC, as well as requirements for when such fees must be paid. *See* 47 C.F.R. §§ 1.1154, 1.1157(b)(1).

<u>Certification and Reporting Requirements of Telecommunications Carriers</u>

20.   Section 64.5001(c) of the Rules requires that an officer of each prepaid calling card provider submit a quarterly certification to the FCC stating, among other things, that the provider is making required USF contributions. 47 C.F.R. § 64.5001(c). Each quarterly certification is due no later than the last day of the subsequent quarter.

21.   Section 43.62(b) of the Rules requires that carriers that provide international telecommunications services file reports with the FCC containing data on overseas traffic.  47 C.F.R. § 43.62(b). Such reports are due no later than July 31 of each year and must include specified traffic and revenue data pertaining to the

6

carrier's international telecommunications services provided in the preceding calendar year.

22.  In the course of providing prepaid calling card services, telecommunications carriers collect personal information relating to their customers' calling practices, such as the number of calls a customer makes, the destination or numbers called by the customer, and the location from where the customer is calling. Section 222 of the Act defines such information as customer proprietary network information ("CPNI"), and imposes a general duty on all telecommunications carriers to protect the confidentiality of their subscribers' proprietary information. 47 U.S.C. § 222. Section 64.2009(e) of the Rules requires, among other things, that carriers establish and maintain systems that adequately protect their subscribers' CPNI and file with the FCC annually, on or before March 1, a certification of their compliance with the CPNI rules. 47 C.F.R. § 64.2009(e).

## Factual Background

23.  Defendant began providing international telecommunications services, primarily through prepaid calling cards for calls to international destinations, on January 1, 2010.

24.  Defendant did not apply for section 214 authority to provide international telecommunications service until April 15, 2013. Defendant did not disclose in its section 214 application that it had been providing international telecommunications without authorization. Nor did Defendant apply for or receive special temporary

7

authority to provide international telecommunications services while its application for section 214 authority was pending.

25. The FCC granted Defendant's application for section 214 authority on May 10, 2013.

26. Although Defendant began providing telecommunications services on January 1, 2010, Defendant did not file any Telecommunications Reporting Worksheets (FCC Form 499-A) due annually on April 1, until July and August 2013.

27. Although Defendant began providing telecommunications services on January 1, 2010, Defendant did not timely pay required regulatory fees for fiscal years 2011 and 2012. On August 27, 2014, Defendant entered into an installment payment plan with the FCC for past due regulatory fees for 2011 and 2012, which was satisfied on September 22, 2014.

28. Although Defendant began providing telecommunications services on January 1, 2010, Defendant did not timely make required contributions to the TRS Fund for contribution periods 2011-2012, 2012-2013, and 2013-14. On February 28, 2014, the TRS Fund administrator transferred Defendant's debt to the U.S. Treasury. Effective April 7, 2014, Defendant entered into an installment payment plan with the Treasury Department that was satisfied on October 19, 2015.

29. Although Defendant began providing telecommunications services on January 1, 2010, Defendant did not make required contributions to the LNP Fund for billing cycles July 2011-June 2012 and July 2012-June 2013, and Defendant did

8

not timely contribute to the LNP Fund for billing cycle July 2013-June 2014.

30.  Although Defendant began providing telecommunications services on January 1, 2010, Defendant did not timely file required quarterly prepaid calling card certifications.  Defendant filed 14 certifications—covering the first quarter of 2010 (due on June 30, 2010) through the second quarter of 2013 (due on September 30, 2013)—on December 18, 2013. Defendant also did not timely file certifications for the fourth quarter of 2013 and the first quarter of 2014.

31.  Although Defendant began providing telecommunications services on January 1, 2010, Defendant did not file annual international traffic and revenue reports in 2011, 2012, 2013, and 2014 (providing data for 2010, 2011, 2012, and 2013). These reports were due by July 31 of each year but Defendant did not file its 2011, 2012, and 2013 reports until February 20, 2014, and Defendant did not file its 2014 report until August 5, 2014.

32.  Although Defendant began providing telecommunications services on January 1, 2010, defendant did not file annual CPNI certifications in 2011, 2012, 2013, and 2014. These certifications were due by March 1 of each year but Defendant did not file its 2011, 2012, and 2013 certifications until April 16, 2013, and did not file its 2014 certification until April 15, 2014.

### Procedural History

33.  In January 2013, the FCC learned that Defendant might not be complying with the Act and the Rules. After a preliminary investigation, the FCC sent a letter

9

of inquiry ("LOI") to Defendant on April 8, 2013, directing Defendant to respond to questions regarding its compliance with the Act and the Rules pertaining to Defendant's authority to provide international telecommunications services, payment of regulatory obligations, and other related requirements.

34. Defendant responded to the LOI on April 24, 2013. Defendant supplemented its response to the LOI on July 7, 2014, and again August 7, 2014.

35. On September 16, 2014, the FCC released a Notice of Apparent Liability ("NAL") preliminarily finding that Defendant had willfully and repeatedly violated sections 214, 222, 225(b), and 251(e)(2) of the Act and sections 1.1154, 1.1157(b)(1), 43.62, 52.32, 54.711, 63.18, 64.604(c)(5)(iii), 64.2009(e), and 64.5001(c). *See* Exhibit A - *PTT Phone Cards, Inc.*, Notice of Apparent Liability for Forfeiture, 29 FCC Rcd 11531 (2014). The FCC proposed a forfeiture penalty of $493,327 for these violations. Exhibit A.

36. On October 9, 2016, Defendant filed a response to the NAL. Defendant did not dispute the underlying facts of any of the violations alleged in the NAL except for asserting, without any factual support, that another carrier whose services Defendant resold possibly satisfied the TRS contributions associated with Defendant's calling card operations.

37. On December 7, 2015, after considering Defendant's Response to the Notice of Apparent Liability, the FCC released a Forfeiture Order in the amount of $493,327 against Defendant for willful and repeated violations of sections 214, 222,

10

225(b), and 251(e)(2) of the Act and sections 1.1154, 1.1157(b)(1), 43.62, 52.32, 54.711, 63.18, 64.604(c)(5)(iii), 64.2009(e), and 64.5001(c) of the Rules. *See* Exhibit B -*PTT Phone Cards, Inc.*, Forfeiture Order, 30 FCC Rcd 14701 (2015).

38. Defendant was ordered to pay the forfeiture within 30 calendar days after release of the Forfeiture Order but failed to do so. Exhibit C - Certificate of Forfeiture.

## Count 1
### Defendant Failed to Obtain Authorization to Provide International Telecommunications Services as Required by 47 U.S.C. § 214 and 47 C.F.R. § 63.18

39. Plaintiff repeats and realleges as if set forth fully herein, the foregoing paragraphs 1 through 38, inclusive.

40. From January 1, 2010 through May 9, 2013, Defendant provided international telecommunications services but did not have the authorization required under 47 U.S.C. § 214.

41. Defendant's provision of international telecommunications services from January 1, 2010 through May 9, 2013, without section 214 authorization violated 47 U.S.C. § 214 and 47 C.F.R. § 63.18.

42. Defendant's failure to comply with the authorization requirement imposed by the Act and the Rules constituted a conscious omission that Defendant could have prevented by obtaining the required authorization, and so its non-compliance was willful. *See* 47 U.S.C. § 503(b)(1)(B).

43. Defendant's violation of the authorization requirement was continuing

11

and repeated until May 10, 2013, when Defendant obtained section 214 authorization. *See* 47 U.S.C. § 503(b)(1)(B).

44.  The FCC's imposition of the $100,000 forfeiture penalty on Defendant for its willful and repeated violation of 47 U.S.C. § 214 and 47 C.F.R. § 63.18 was appropriate.

**Count 2**
**Defendant Failed To Timely File Annual Telecommunications Reporting**
**Worksheets as Required by 47 C.F.R. §§ 52.32(b), 54.711, and**
**64.604(c)(5)(iii)(B)**

45.  Plaintiff repeats and realleges as if set forth fully herein, the foregoing paragraphs 1 through 44, inclusive.

46.  Defendant began providing international telecommunications services on January 1, 2010, and was required to file an annual Telecommunications Reporting Worksheet (FCC Form 499-A) annually on April 1.

47.  Defendant did not file the FCC Form 499-A due on April 1, 2011, until August 25, 2013, more than 28 months late. Defendant did not file the FCC Form 499-A due on April 1, 2012, until August 5, 2013, more than 16 months late. Defendant did not file the FCC Form 499-A due on April 1, 2013, until July 19, 2013, more than three months late.

48.  Defendant's late filings of the required annual FCC Form 499-A violated 47 C.F.R. §§ 52.32(b), 54.711(a), and 64.604(c)(5)(iii)(B).

49.  Defendant's failure to comply with the reporting requirements imposed by the Rules constituted a conscious omission that Defendant could have prevented by

timely submitting the required Telecommunications Reporting Worksheets, and so its non-compliance was willful. *See* 47 U.S.C. § 503(b)(1)(B).

50.  Defendant failed to timely submit required annual Telecommunications Reporting Worksheets on multiple occasions and so its violation was repeated and continuing until July and August 2013. *See* 47 U.S.C. § 503(b)(1)(B).

51.  The FCC's imposition of the $150,000 forfeiture penalty on Defendant for its violations of 47 C.F.R. §§ 52.32(b), 54.711(a) and 64.604(c)(5)(iii)(B) was appropriate.

## Count 3
## Defendant Failed to Timely Contribute to the Telecommunications Relay Service Fund as Required by 47 U.S.C. § 225 and 47 C.F.R. § 64.604(c)(5)(iii)

52.  Plaintiff repeats and realleges as if set forth fully herein, the foregoing paragraphs 1 through 51, inclusive.

53.  Defendant did not contribute to the TRS Fund during the 2011-2012, 2012-2013, and 2013-2014 contribution periods in violation of 47 U.S.C. § 225 (b)(1) and 47 C.F.R. § 64.604(c)(5)(iii).

54.  Defendant's failure to comply with the contribution requirements imposed by the Act and the Rules constituted a conscious omission that Defendant could have prevented by timely contributing to the TRS Fund, and so its non-compliance was willful. *See* 47 U.S.C. § 503(b)(1)(B).

55.  Defendant failed to timely contribute to the TRS Fund on multiple occasions, and so its violation was repeated and continuing. *See* 47 U.S.C.

§ 503(b)(1)(B).

56.  The FCC's imposition of the $53,327 forfeiture penalty on Defendant for its violations of 47 U.S.C. § 225 and 47 C.F.R. § 64.604(c)(5)(iii) was appropriate.

### Count 4
### Defendant Failed To Contribute to the Local Number Portability Cost Recovery Program as Required by 47 U.S.C. § 251(e)(2) and 47 C.F.R. § 52.32

57.  Plaintiff repeats and realleges as if set forth fully herein, the foregoing paragraphs 1 through 56, inclusive.

58.  Defendant did not timely contribute to the LNP Fund during the July 2011-June 2012, July 2012-June 2013, and 2013-June 2014 billing cycles in violation of 47 U.S.C. § 251(e)(2) and 47 C.F.R. § 52.32.

59.  Defendant's failure to comply with the contribution requirements imposed by the Act and the Rules constituted a conscious omission that Defendant could have prevented by timely contributing to the LNP Fund, and so its non-compliance was willful. *See* 47 U.S.C. § 503(b)(1)(B).

60.  Defendant failed to timely contribute to the LNP Fund on more than one occasion, and so its violation was repeated and continuing. *See* 47 U.S.C. § 503(b)(1)(B).

61.  The FCC's imposition of the $30,000 forfeiture penalty on Defendant for its violations of 47 U.S.C. § 251(e)(2) and 47 C.F.R. § 52.32 was appropriate.

14

Rules constituted a conscious omission that Defendant could have prevented by timely filing the prepaid calling card certifications, and so its non-compliance was willful. *See* 47 U.S.C. § 503(b)(1)(B).

70. Defendant failed to timely file prepaid calling card certifications on multiple occasions, and so its violations were repeated and continuing. *See* 47 U.S.C. § 503(b)(1)(B).

71. The FCC's imposition of the $48,000 forfeiture penalty on Defendant for its violations of 47 C.F.R. § 64.5001(c) was appropriate.

## Count 7
## Defendant Failed To File International Traffic and Revenue Reports as Required by 47 C.F.R. § 43.62

72. Plaintiff repeats and realleges as if set forth fully herein, the foregoing paragraphs 1 through 71, inclusive.

73. Defendant failed to timely file international telecommunications traffic and revenue reports in 2011, 2012, 2013, and 2014 in violation of 47 C.F.R. § 43.62.

74. Defendant's failure to comply with the filing requirements imposed by the Rules constituted a conscious omission that Defendant could have prevented by timely filing the international traffic and revenue reports, and so its non-compliance was willful. *See* 47 U.S.C. § 503(b)(1)(B).

75. Defendant failed to timely file international traffic and revenue reports on multiple occasions, and so its violations were repeated and continuing. *See* 47 U.S.C. § 503(b)(1)(B).

76. The FCC's imposition of the $12,000 forfeiture penalty on Defendant for its violations of 47 C.F.R. § 43.62 was appropriate.

### Count 8
### Defendant Failed To Timely File CPNI Certifications
### as Required by 47 U.S.C. § 222 and 47 C.F.R. § 64.2009(e)

77. Plaintiff repeats and realleges as if set forth fully herein, the foregoing paragraphs 1 through 76, inclusive.

78. Defendant failed to timely file CPNI certifications in violation of 47 U.S.C. § 222(c) and 47 C.F.R. § 64.2009(e).

79. Defendant's failure to comply with the filing requirements imposed by the Act and the Rules constituted a conscious omission that Defendant could have prevented by timely filing the CPNI certifications, and so its non-compliance was willful. *See* 47 U.S.C. § 503(b)(1)(B).

80. Defendant failed to timely file CPNI certifications on multiple occasions, and so its violations were repeated and continuing. *See* 47 U.S.C. § 503(b)(1)(B).

81. The FCC's imposition of the $80,000 forfeiture penalty on Defendant for its violations of 47 U.S.C. § 222(c) and 47 C.F.R. § 64.2009(e) was appropriate.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment against Defendant as follows:

a.      Judgment in the amount of $493,327;

b.      Interest from the date of judgment at the legal rate in effect on the date of judgment, pursuant to 28 U.S.C. § 1961;

17

c.      Costs and disbursements incurred by Plaintiff in this action; and

d.      Such other further relief that the Court may deem just and proper.

Respectfully submitted,

WILLIAM M. MCSWAIN
United States Attorney

GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

ANTHONY ST. JOSEPH [Pa #84901]
Assistant United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA  19106
Tel:  215-861-8267
Fax:  215-861-8618
Anthony.stjoseph@usdoj.gov

Dated:  May 8, 2018

18

Exhibit A

Federal Communications Commission                    FCC 14-135

**Before the**
**Federal Communications Commission**
**Washington, D.C. 20554**

| | |
|---|---|
| In the Matter of | ) |
| | ) |
| PTT Phone Cards, Inc. | ) |
| | ) |
| | ) |

File No.: EB-IHD-13-00011669[1]

NAL/Acct. No.: 201432080040

FRN: 0022611958

### NOTICE OF APPARENT LIABILITY FOR FORFEITURE

**Adopted: September 15, 2014**                    **Released: September 16, 2014**

By the Commission:

## I.    INTRODUCTION

1.    When a company enters the telecommunications services marketplace, it subjects itself to a number of safeguards and support mechanisms that Congress and the Federal Communications Commission have established to help ensure, among other goals, rapid, efficient, and reasonably priced communications for all Americans. In this Notice of Apparent Liability for Forfeiture, we propose penalties of $493,327 against PTT Phone Cards, Inc. (PTT or Company), a prepaid calling card provider that apparently provided international telecommunications services in disregard of virtually all of its regulatory obligations for over three years. Although PTT has been aware of the Enforcement Bureau's (Bureau) investigation since last year, some of PTT's apparent violations continue to this day.

2.    PTT's apparent violations include providing international telecommunications services without first obtaining Commission authority, a failure that prevented the Commission from timely evaluating whether PTT's provision of those services would create risks to consumers and competition. PTT also apparently failed to file the annual reports that the Administrators of the Universal Service Fund (USF), the Telecommunications Relay Service (TRS) Fund, and the cost recovery mechanisms for local number portability (LNP) and the North American Numbering Plan (NANP) use to determine service providers' contribution obligations, and that the Commission uses to assess regulatory fees. The filing failures persisted for over three years and resulted in either PTT's late payment or non-payment of required TRS and LNP contributions and regulatory fees.

3.    Additionally, PTT was required to file periodic reports certifying its compliance with the Commission's USF contribution and customer proprietary network information (CPNI) rules, and disclosing its international traffic and revenues. PTT also apparently failed to meet these requirements, thereby undermining our ability to monitor compliance with our USF and customer privacy rules and developments in the international telecommunications market. The penalties we propose here reflect the seriousness, duration, and scope of PTT's violations.

## II.    BACKGROUND

4.    PTT is a Pennsylvania corporation that, from January 1, 2010, through early 2014, operated under the trade name Star Pinless as a prepaid calling card services provider reselling international telecommunications services.[2] PTT sold its prepaid calling card services through grocery

---

[1] This case was formerly assigned File No. EB-IH-13-0051.

[2] *See* Letter from Ayub Amir, President, PTT Phone Cards, Inc., to Robert Krinsky, Attorney Advisor, Investigations and Hearings Division, FCC Enforcement Bureau at Responses to Inquiries 1, 5–6, 18 (Apr. 24, 2013) (on file in EB-IHD-13-00011669) (*LOI Response*); Letter from Ayub Amir, President, PTT Phone Cards, Inc., to

(continued....)


GOVERNMENT EXHIBIT

A

stores that served as distributors to PTT's end user customers.[3]  PTT also used the Internet to market its international telecommunications services to other potential distributors and resellers.[4]  PTT's distributors helped set up each end user with a PTT account.  If an end user chose to do so, the account information included the end user's phone number so that PTT's prepaid calling platform could recognize the end user's number, thereby enabling the end user to place telephone calls without having to dial a personal identification number (PIN) access code.[5]  After the authentication process, whether by PIN or PIN-less processes, PTT's platform routed telephone calls to the international destinations to which PTT end users sought to connect.[6]

        5.        In January 2013, the Bureau learned that PTT might not be complying with the provisions of the Communications Act of 1934, as amended (Act) and the Commission's rules (Rules) applicable to prepaid calling card providers.  After a preliminary investigation, the Bureau sent a Letter of Inquiry (LOI) to PTT on April 8, 2013, directing the Company to respond to questions regarding its compliance with the provisions of the Act and the Rules pertaining to PTT's authority to provide international telecommunications services, payment of regulatory obligations, and other related requirements.[7]  On April 24, 2013, PTT responded to the LOI.[8]  On July 7, 2014, and August 7, 2014, PTT supplemented its LOI Response.[9]  On December 20, 2013, PTT entered into a tolling agreement with the Bureau, which extended the applicable statute of limitations period.[10]

**III.     DISCUSSION**

        6.        Based on the facts and circumstances before us, we find that PTT apparently willfully or repeatedly failed to: (a) obtain Commission authority prior to providing international telecommunications services, as Section 214(a) of the Act and Section 63.18 of the Rules require; (b) timely file annual Telecommunications Reporting Worksheets, as Sections 52.32, 54.711, and 64.604(c)(5)(iii) of the Rules require; (c) timely make required TRS and LNP contributions and timely pay required regulatory fees in accordance with Section 251(e)(2) of the Act and Sections 1.1154, 1.1157(b)(1), 53.32, and 64.604(c)(5)(iii) of the Rules; and (d) timely file prepaid calling card certifications, international traffic

---

(Continued from previous page)  ───────────────────────
Robert Krinsky, Attorney Advisor, Investigations and Hearings Division, FCC Enforcement Bureau at Responses to Supplemental LOI Inquiries 1, 5–6, 18 (July 7, 2014) (on file in EB-IHD-13-00011669) (*Supplemental LOI Response of July 7, 2014*).

[3] *See Supplemental LOI Response of July 7, 2014 supra* note 2 at Responses to Inquiries 8–9.

[4] *See* Star Pinless, "Prepaid Partner/Reseller Program," *formerly available at* http://mystarpinless.com/Common/HowItWorks.aspx (last visited Jan. 8, 2013) (on file in EB-IHD-13-00011669). In early 2014, PTT discontinued the website for its Star Pinless telecommunications service, which it had established in 2010; *Supplemental LOI Response of July 7, 2014 supra* note 2 at Response to Inquiry 2.

[5] *See LOI Response supra* note 2 at Responses to Inquiries 12–13.

[6] *See id.* at Response to Inquiry 13.  PTT states that that it programmed its prepaid calling platform to prevent its customers from completing domestic phone calls.  *See Supplemental LOI Response of July 7, 2014 supra* note 2 at Response to Inquiry 6.

[7] *See* Letter from Pamela S. Kane, Deputy Chief, Investigations and Hearings Division, FCC Enforcement Bureau, to Ayub Amir, President, PTT Phone Cards, Inc. (Apr. 8, 2013) (on file in EB-IHD-13-00011669) (*LOI*).

[8] *See LOI Response supra* note 2.

[9] *See id.*; *Supplemental LOI Response of July 7, 2014 supra* note 2; Letter from Raul Magallanes, Esq., Law Offices of Raul Magallanes, Counsel to PTT, to Robert Krinsky, Attorney Advisor, Investigations and Hearings Division, FCC Enforcement Bureau (Aug. 7, 2013) (on file in EB-IHD-13-00011669).

[10] *See* Tolling Agreement between PTT Phone Cards, Inc. and FCC Enforcement Bureau (Dec. 20, 2013) (on file in in EB-IHD-13-00011669).

and revenue reports, and CPNI certifications in accordance with Section 222 of the Act and Sections 43.61, 64.2009(e), and 64.5001(c)(3) of the Rules.[11]

**A.    PTT Apparently Failed to Obtain International Section 214 Authority Before Providing International Telecommunications Services**

7.      We find that PTT apparently violated Section 214(a) of the Act and Section 63.18 of the Rules by willfully or repeatedly providing international telecommunications services without international Section 214 authority from January 1, 2010, until May 9, 2013. Section 214(a) of the Act prohibits any carrier from constructing, extending, acquiring, or operating any line, and from engaging in transmission through any such line, without first obtaining a certification of authorization from the Commission.[12] While the Commission has granted "blanket" authority to carriers providing domestic service, meaning that such carriers need not apply to the Commission for such authority before providing domestic service,[13] the Commission has not granted the same authority for providers of international telecommunications services.[14] Instead, a carrier must seek and obtain Section 214 authority from the Commission prior to providing international telecommunications services.[15] The Commission has explained that the international Section 214 review process enables the Commission to screen applications for risks to competition, particularly in situations where the applicant has an affiliation with a foreign carrier with market power on the foreign end of the route that may be able to leverage that market power to discriminate against U.S. competitors to the detriment of U.S. consumers.[16]

8.      Section 63.18 of the Rules requires that any carrier that seeks Section 214 authority "for the provision of common carrier communications services between the United States, its territories or possessions, and a foreign point shall request such authority by formal application."[17] Through this process, the applicant provides the Commission with, among other things, contact information, ownership information, information on any affiliations it may have with foreign carriers, a certification that it will comply with Commission rules, and a certification that the applicant is not subject to denial of federal benefits pursuant to the Anti-Drug Abuse Act of 1988.[18] Section 63.18(e)(2) of the Rules establishes specific requirements for parties "applying for authority to resell the international services of authorized

---

[11] *See* 47 U.S.C. §§ 214(a), 222, 225, 251(e)(2); 47 C.F.R. §§ 1.1154, 1.1157(b)(1), 43.61, 52.32, 54.711, 63.18, 64.604(c)(5)(iii), 64.2009(e), 64.5001(c)(3).

[12] *See* 47 U.S.C. § 214(a).

[13] *See* 47 C.F.R. § 63.01(a) (authorizing "[a]ny party that would be a domestic interstate communications common carrier . . . to provide domestic, interstate services to any domestic point and to construct or operate any domestic transmission line as long as it obtains all necessary authorizations from the Commission for use of radio frequencies").

[14] *See Implementation of Section 402(b)(2)(A) of the Telecom. Act of 1996*, Report and Order in CC Docket No. 97-11, Second Memorandum Opinion and Order in AAD File No. 98-43, 14 FCC Rcd 11364, 11365–66, para. 2 & n.8 (1999) (grant of blanket authority is only for domestic services and does not extend to international services).

[15] *See* 47 C.F.R. § 63.18; *see also 1998 Biennial Regulatory Review – Review of International Common Carrier Regulations*, Report and Order, 14 FCC Rcd 4909, 4912–17, paras. 8–18 (1999) (*1998 International Biennial Review Order*) (Commission concluded not to adopt a blanket authorization for international services but to further streamline the authorization process).

[16] *See 1998 International Biennial Review Order*, 14 FCC Rcd at 4914–16, paras. 14–16; *Personal Communications Industry Ass'n's Broadband Personal Communications Services Alliance's Petition for Forbearance for Broadband Personal Communications Services*, Memorandum Opinion and Order and Notice of Proposed Rulemaking, 13 FCC Rcd 16857, 16882–83, para. 50 (1998) (*PCIA Forbearance Order*).

[17] 47 C.F.R. § 63.18.

[18] *See id.*

common carriers," and Section 63.23 of the Rules, in turn, identifies the conditions that apply to "carriers authorized to resell the international services of other authorized carriers."[19]

9.      In its *LOI Response*, PTT states that it began providing international telecommunications services on January 1, 2010.[20] PTT did not apply for international Section 214 authority until April 15, 2013, three days after acknowledging receipt of the Bureau's *LOI* on April 12, 2013.[21] At the time of its application, PTT did not disclose to the Commission's International Bureau that it had been providing international telecommunications services without authorization. Nor did PTT apply for or receive special temporary authority to provide international telecommunications services while its application for permanent authority was pending.[22] The Commission has determined that a "failure to obtain an international Section 214 authorization prior to offering international telecommunications service constitutes a continuing violation until the violation is cured."[23] Here, PTT did not cure its continuing violation until May 10, 2013, the date the Commission's International Bureau granted PTT's application for international Section 214 authority.[24] Based on the preponderance of the evidence, we find that PTT apparently violated Section 214(a) of the Act and Section 63.18 of the Rules by willfully or repeatedly providing international telecommunications services without Section 214 authority from January 1, 2010, through May 9, 2013.[25]

**B.      PTT Apparently Failed to Timely File Annual Telecommunications Reporting Worksheets for 2011, 2012, and 2013**

10.     We find that PTT apparently violated Sections 52.32(b), 54.711, and 64.604(c)(5)(iii)(B) of the Rules by willfully or repeatedly failing to timely file annual Telecommunications Reporting Worksheets (FCC Forms 499-A or Worksheets) for 2011, 2012, and 2013. The Act directs the Commission to establish, administer, and maintain programs to promote universal service and TRS, and to ensure LNP and effective numbering administration more generally, among other mandates.[26] To help accomplish these goals, the Commission has established the USF, the TRS Fund, and cost recovery mechanisms for LNP and NANP. As Congress has directed,[27] the Commission funds these programs though assessments on telecommunications providers. To gather the data necessary to calculate the assessments, the Commission requires international telecommunications service providers, among others, to file annual Worksheets reporting the providers' revenues from various types of services during the preceding calendar year.[28] The Administrators of the USF, TRS, LNP, and NANP programs rely upon

---

[19] *See id.* §§ 63.18(e)(2), 63.23.

[20] *See LOI Response supra* note 2 at Responses to Inquiries 9–11, 18.

[21] *See* PTT Phone Cards, Inc., d/b/a Star Pinless, International Section 214 Application, IBFS File No.: ITC-214-20130415-00108 (filed Apr. 15, 2013) (International Section 214 Application); *see also* U.S. Postal Service Return Receipt, signed by Ayub Amir, President, PTT Phone Cards, Inc. (Apr. 12, 2013) (on file in EB-IHD-13-00011669) (*Apr. 12, 2013 U.S. Postal Receipt*).

[22] *See* 47 C.F.R. §§ 1.10016, 63.25.

[23] *See Unipoint Technologies, Inc.,* Notice of Apparent Liability for Forfeiture, 27 FCC Rcd 12751, 12757, para. 13 (2012) (*Unipoint NAL*), forfeiture issued, Forfeiture Order, 29 FCC Rcd 1633 (2014) (*Unipoint Forfeiture Order*) (imposing $179,000 forfeiture on prepaid calling card provider for, among other things, providing unauthorized international telecommunications service).

[24] *See International Authorizations Granted,* Public Notice, Report No. TEL-01617, 28 FCC Rcd 7112, 7113 (Int'l Bur. 2013).

[25] *See* 47 U.S.C. § 214(a); 47 C.F.R. § 63.18.

[26] *See* 47 U.S.C. §§ 225(b)(1)–(2), 251(b)(2), (e), 254(a)(2).

[27] *See* 47 U.S.C. §§ 225(d)(3), 251(e)(2), 254(d).

[28] *See* 47 C.F.R. §§ 52.32(b), 54.711(a), 64.604(c)(5)(iii)(B).

the reported data to calculate and assess any necessary contributions.  Although some providers may not need to contribute to each fund and cost recovery mechanism, all telecommunications service providers must file annual Worksheets.[29]  The Commission also uses the annual Worksheet data to calculate and assess annual regulatory fees in accordance with the Act.[30]

11.     PTT neglected to timely file required annual Worksheets for 2011, 2012, and 2013. These failures to timely file constituted continuing violations until the violations were cured.[31]  The Company's 2011 Worksheet was due on April 1, 2011, but it was not received by the Commission until August 5, 2013, more than 28 months past its due date.[32]  The Company's 2012 Worksheet was due on April 1, 2012, but it was not received until August 5, 2013, more than 16 months late.[33]  PTT's 2013 Worksheet was due on April 1, 2013, but it was not received until July 19, 2013, more than three months late.[34]  These three late filings were made only after PTT had acknowledged receipt of the Bureau's *LOI*, which had informed PTT that the Bureau was investigating the Company's compliance with the Worksheet filing requirement.[35]  Based on the preponderance of the evidence, we find that PTT apparently willfully or repeatedly violated Sections 52.32(b), 54.711, and 64.604(c)(5)(iii)(B) of the Rules by failing to timely file its 2011, 2012, and 2013 annual Worksheets.[36]

C.     **PTT Apparently Failed to Timely Contribute to the TRS Fund**

12.     We also find that PTT apparently violated Section 225 of the Act and Section 64.604(c)(5)(iii) of the Rules by willfully or repeatedly failing to timely contribute to the TRS Fund. Section 225(b)(1) of the Act, which codifies Title IV of the Americans with Disabilities Act of 1990, directs the Commission to "ensure that interstate and intrastate telecommunications relay services are available, to the extent possible and in the most efficient manner, to hearing-impaired and speech-impaired individuals in the United States."[37]  To that end, the Commission established the TRS Fund to reimburse TRS providers for the costs of providing interstate telecommunications relay services.[38]

---

[29] *See, e.g., 2014 Telecommunications Reporting Worksheet Instructions (Form 499-A)* in *Wireline Competition Bureau Releases 2014 Telecommunications Reporting Worksheets and Accompanying Instructions,* Public Notice, 29 FCC Rcd 939, 945 (Wireline Comp. Bur. 2014) (*Telecommunications Worksheet Instructions*).

[30] *See Telecommunications Worksheet Instructions,* 29 FCC Rcd at 945; 47 U.S.C. § 159(a), (b)(1)(A), (g) (authorizing the Commission to collect annual regulatory fees to recover the costs of enforcement, policy and rulemaking, user information, and international activities).

[31] *See, e.g., Unipoint NAL,* 27 FCC Rcd at 12758, para. 14.

[32] *See* Universal Service Administrative Company, PTT Phone Cards, Inc. – Form 499 – Search Forms, *available at* https://efile.universalservice.org/form499/source/search.asp (last visited June 2, 2014) (on file in EB-IHD-13-00011669).

[33] *See id.*

[34] *See id.*

[35] *See Apr. 12, 2013 U.S. Postal Receipt supra* note 21.

[36] *See* 47 U.S.C. §§ 52.32(b), 54.711, 64.604(c)(5)(iii)(B).

[37] *See* 47 U.S.C. § 225(b)(1).

[38] *See Telecommunications Relay Services and the Americans with Disabilities Act of 1990,* Third Report and Order, 8 FCC Rcd 5300, 5300, para. 3 (1993). Telecommunications relay services enable persons with hearing and speech disabilities to communicate by telephone with other individuals. Such services provide telephone access to a significant number of Americans who, without it, might not be able to make calls to or receive calls from other users. *See Telecommunications Relay Services and Speech-to-Speech Services for Individuals with Hearing and Speech Disabilities,* Report and Order, 15 FCC Rcd 5140, 5141, 5143, paras. 2, 5 (2000).

Pursuant to Section 64.604(c)(5)(iii)(A) of the Rules, every provider of interstate or international telecommunications services must contribute to the TRS Fund based upon its end-user revenues.[39]

13.     As a provider of international telecommunications services, PTT was obligated to contribute to the TRS Fund on the basis of its international end-user telecommunications revenues.[40] The TRS Fund Administrator calculates the contribution that a carrier is required to make to the TRS Fund by applying a contribution factor (determined annually by the Commission) to the carrier's revenues for the prior calendar year as reported in the annual Worksheet due in April of each year.[41] The TRS Fund Administrator uses a July 1 through June 30 billing year, and subject carriers must make TRS contributions on a monthly or annual basis.[42] Failures to timely contribute to the TRS Fund constitute continuing violations until the violations are cured.[43]

14.     Because PTT did not timely file its annual Worksheets for 2011, 2012, and 2013, the TRS Fund Administrator did not bill PTT for mandated TRS contributions until September 13, 2013.[44] This *September 2013 Invoice* included the TRS contribution amounts that PTT owed for July 1, 2011, through June 30, 2012 (the 2011–2012 TRS contribution period), July 1, 2012, through June 30, 2013 (the 2012–2013 TRS contribution period), and for July 1, 2013, through September 30, 2013 (the first three months of the 2013–2014 TRS contribution period).[45] Had PTT timely filed its annual Worksheets, its payments for each of these periods would have been due in equal monthly installments beginning in August 2011, August 2012, and August 2013, respectively.[46]

---

[39] 47 C.F.R. § 64.604(c)(5)(iii)(A) (requiring every carrier that provides "interstate services, including . . . international . . . services" to contribute to the TRS Fund).

[40] *See* 47 C.F.R. § 64.604(c)(5)(iii)(A); *see also, e.g.*, 47 C.F.R. § 64.604(c)(5)(iii)(B) (setting forth methods for computing and paying TRS contributions); *Telecommunications Worksheet Instructions*, 29 FCC Rcd at 973–74, Instructions for Lines 511–14 (setting forth line-by-line computation of TRS contribution amounts).

[41] 47 C.F.R. § 64.604(c)(5)(iii)(B).

[42] *Id.* Under the Rules, each subject provider must contribute at least $25 per year, and providers whose annual contributions are less than $1,200 must pay the entire amount at the beginning of the contribution period. Otherwise, providers that are current on their payments may divide their contributions into equal, monthly payments. *Id.*

[43] *See, e.g.*, *Unipoint NAL*, 27 FCC Rcd at 12758–59, para. 15; *RB Communications, Inc., d/b/a Starfone*, Notice of Apparent Liability for Forfeiture and Order, 27 FCC Rcd 4393, 4402, para. 25 (2012) (*Starfone NAL*), *forfeiture issued*, Forfeiture Order, 29 FCC Rcd 5668 (2014) (*Starfone Forfeiture Order*); *Omniat International Telecom, LLC d/b/a Omniat Telecom*, Notice of Apparent Liability for Forfeiture and Order, 24 FCC Rcd 4254, 4265–66, paras. 27, 29 (2009) (*Omniat NAL*).

[44] *See* E-mail from Wendy S. Lutz, Accountant, Rolka Loube Saltzer Associates LLC, to Robert B. Krinsky, Attorney Advisor, Investigations and Hearings Division, FCC Enforcement Bureau (Nov. 27, 2013, 12:33 EST) (on file in EB-IHD-13-00011669).

[45] *See id.*; Interstate TRS Fund Contribution, Invoice from TRS Fund Administrator Rolka Loube Saltzer Associates LLC to PTT Phone Cards, Inc., Invoice No. 82977009131 (dated Sept. 13, 2013) (*September 2013 TRS Invoice*) (on file in EB-IHD-13-00011669).

[46] *See* E-mail from Wendy S. Lutz, Accountant, Rolka Loube Saltzer Associates LLC, to Robert B. Krinsky, Attorney Advisor, Investigations and Hearings Division, FCC Enforcement Bureau (Nov. 25, 2013, 14:36 EST) (*Lutz E-mail Nov. 25, 2013*) (on file in EB-IHD-13-00011669). For each of these periods, PTT's TRS contribution obligation was large enough for it to have elected payment in monthly increments over twelve-months. *See* 47 C.F.R. § 64.604(c)(5)(iii)(B) (allowing service providers whose contribution obligations total $1,200 or more to divide their contributions into equal monthly payments). Because the period for installment payments for 2011–2012 and 2012–2013 had already passed, the *September 2013 TRS Invoice* included all the overdue payments.

11536

15.   The *September 2013 TRS Invoice* required PTT to contribute $34,485.36 to the TRS Fund by October 11, 2013.[47]  The *September 2013 TRS Invoice* went unpaid, as did all subsequent monthly invoices from the TRS Fund Administrator, which included additional monthly installment obligations for the 2013–2014 TRS contribution period.[48]  On February 28, 2014, the TRS Fund Administrator transferred PTT's TRS debt to the U.S. Department of Treasury (Treasury Department).[49]  Effective April 7, 2014, the Treasury Department and PTT entered into a payment agreement that requires PTT to make monthly installment payments until April 2016.[50]  PTT's unpaid TRS obligations totaled $46,653.25 at the time that PTT entered into its payment agreement with the Treasury Department, an agreement that stemmed from PTT's prior failure to make any TRS contributions.[51]  We therefore conclude, based on a preponderance of the evidence, that PTT apparently violated Section 225 of the Act and Section 64.604(c)(5)(iii) or the Rules by willfully or repeatedly failing to timely make required TRS contributions for the 2011–2012, 2012–2013, and 2013–2014 TRS contribution periods.[52]

**D.    PTT Apparently Failed to Timely Contribute to the LNP Cost Recovery Mechanism**

16.   We next conclude that PTT apparently violated Section 251(e)(2) of the Act and Section 52.32 of the Rules by willfully or repeatedly failing to make timely payments to the LNP cost recovery mechanism.  Telecommunications number portability concerns the ability of consumers of telecommunications services to "retain, at the same location, existing telecommunications numbers without impairment of quality, reliability, or convenience when switching from one telecommunications carrier to another."[53]  The presence of this feature in the telecommunications marketplace fosters consumer choice and enhances competition.[54]  Section 251(b)(2) of the Act establishes that every telecommunications carrier has a duty to provide local number portability in accordance with requirements established by the Commission.[55]  Section 251(e)(2) mandates that "[t]he cost of establishing . . . number portability shall be borne by all telecommunications carriers on a competitively neutral basis as determined by the Commission."[56]  In implementing this statutory directive, the Commission adopted Section 52.32 of its Rules, which requires, among other things, that all telecommunications carriers contribute to the costs of LNP on the basis of their end-user

---

[47] *See September 2013 TRS Invoice supra* note 45.

[48] *See id.*; *Lutz E-mail Nov. 25, 2013 supra* note 46 ("There are no payments on this account."); Interstate TRS Fund Contribution, Statement from TRS Fund Administrator Rolka Loube Saltzer Associates LLC to PTT Phone Cards, Inc. (dated Dec. 13, 2013) (listing $39,395.66 as overdue) (on file in EB-IHD-13-00011669).

[49] *See* E-mail from Wendy S. Lutz, Accountant, Rolka Loube Saltzer Associates LLC, to David W. Rolka, President, Rolka Loube Saltzer Associates LLC (May 16, 2014, 09:57 EDT) (on file in EB-IHD-13-00011669).

[50] *See* Letter from U.S. Dept. of Treasury, Financial Management Service, Debt management Services to Ayub Amir, Business Contact, PTT Phone Cards, Inc., FedDebt Payment Agreement ID Number:  PA14017957, Payment Agreement at 1 (dated Apr. 7, 2013) (on file in EB-IHD-13-00011669).

[51] *See id.* at Attachment A.

[52] *See* 47 U.S.C. § 225; 47 C.F.R. § 64.604(c)(5)(iii).

[53] 47 C.F.R. § 52.21(n).

[54] The Commission has observed that in requiring number portability, "Congress recognized that the inability of customers to retain their telephone numbers when changing local service providers hampers the development of local competition." *Telephone Number Portability*, Third Report and Order, 13 FCC Rcd 11701, 11702, para. 3 (1998).  *See* H.R. Rep. No. 104-204(I), 104th Cong., 1st Sess. at 113 (1995) (Joint Explanatory Statement) (stating that "[t]he ability to change service providers is only meaningful if a customer can retain his or her local telephone number").

[55] *See* 47 U.S.C. § 251(b)(2).

[56] *See id.* § 251(b)(2).

Federal Communications Commission                                    FCC 14-135

telecommunications revenues for the prior calendar year.[57]  A failure to make LNP contributions constitutes a continuing violation until it is cured by payment of all monies due.[58]

17.    PTT's failure to timely file its annual Worksheets for 2011, 2012, and 2013 prevented the LNP Administrator from timely billing the Company for required contributions to the LNP cost-recovery mechanism.  Like the TRS Fund Administrator,[59] the LNP Administrator calculates carriers' required contributions according to a July 1 through June 30 billing year.[60]  By the time PTT filed its Worksheets, it owed approximately $14,400 in LNP contributions for the 2011–2012 and 2012–2013 billing cycles.[61]  PTT has not yet paid these required contributions.[62]  PTT also missed three monthly payment deadlines for invoices for the 2013–2014 billing cycle.[63]  We therefore find, based on the preponderance of the evidence, that PTT apparently violated Section 251(e)(2) of the Act and Section 52.32 of the Rules by willfully or repeatedly failing to timely make required payments to the LNP cost recovery mechanism for the 2011–2012, 2012–2013, and 2013–2014 billing cycles.[64]

**E.    PTT Apparently Failed to Timely Pay Required Regulatory Fees**

18.    We further conclude that PTT apparently violated Sections 1.1154 and 1.1157(b)(1) of the Rules by willfully or repeatedly failing to timely pay required regulatory fees for fiscal years 2011 and 2012.  Section 9 of the Act directs the Commission to "assess and collect regulatory fees to recover the costs" of certain enumerated Commission activities, including "enforcement activities, policy and rulemaking activities, user information services, and international activities."[65]  Consistent with this directive, the Commission has set forth in its Rules schedules of annual regulatory fees that entities regulated by the Commission must remit to the Commission, as well as requirements for when the fees must be paid.[66]  As a provider of international telecommunications services, PTT was obligated to pay regulatory fees based on its international end-user revenues as recorded on its annual Worksheets.[67]  Failures to make regulatory fee payments are continuing violations until they are cured by the payment of all monies owed.[68]

19.    PTT's regulatory fees for fiscal years 2011 and 2012 were due by September 15, 2011, and September 13, 2012, respectively.[69]  PTT has not paid its regulatory fees for either fiscal year.  The

---

[57] *See* 47 C.F.R. § 52.32.

[58] *Omniat NAL*, 24 FCC Rcd at 4266–67, para. 28.

[59] *See supra* para. 13.

[60] *See* E-mail from Karen Laffey, Manager, Billing Operations, Neustar, Inc. (LNP Administrator), to Robert Krinsky, Attorney Advisor, Investigations and Hearings Division, FCC Enforcement Bureau (Nov. 27, 2013, 14:24 EST) (*First LNP Administrator E-mail*) (on file in EB-IHD-13-00011669).

[61] *See id.*

[62] *See id.*; E-mail from Karen Laffey, Manager, Billing Operations, Neustar, Inc. (LNP Administrator), to Robert Krinsky, Attorney Advisor, Investigations and Hearings Division, FCC Enforcement Bureau (Nov. 27, 2013, 13:44 EDT) (*Second LNP Administrator E-mail*) (on file in EB-IHD-13-00011669).

[63] *See Second LNP Administrator E-mail.*

[64] *See* 47 U.S.C. § 251(e)(2); 47 C.F.R. § 52.32.

[65] *See* 47 U.S.C. § 159 (a)(1)–(2).

[66] *See* 47 C.F.R. §§ 1.1152–1.1156, 1.1157(b)(1).

[67] *See* 47 C.F.R. § 1.1154.

[68] *See, e.g., Starfone NAL*, 27 FCC Rcd at 4402, para. 27; *Omniat NAL*, 24 FCC Rcd at 4266, para. 29; *Telrite Corporation*, Notice of Apparent Liability for Forfeiture and Order, 23 FCC Rcd 7231, 7245, para. 35 (2008).

[69] *See Reminder that FY 2012 Regulatory Fees Are Due No Later Than September 13, 2012, Eastern Time (ET)*, Public Notice, 27 FCC Rcd 10297 (2012); *FY 2011 Regulatory Fee Deadline is Extended to 11:59 PM, ET*,

(continued....)

_____
Federal Communications Commission                                    FCC 14-135
_____

unpaid fees and associated late penalties totaled $11,033.75 as of July 21, 2014.[70] Based on the
preponderance of the evidence, we find that PTT apparently violated Sections 1.1154 and 1.1157(b)(1) of
the Rules by willfully or repeatedly failing to make regulatory fee payments for fiscal years 2011 and
2012.[71]

**F.      PTT Apparently Failed to Timely File Prepaid Calling Card Certifications**

20.      We also find that PTT apparently violated Section 64.5001(c) of the Rules by willfully or
repeatedly failing to timely file prepaid calling card certifications.  That rule requires that an officer of
each prepaid calling card provider submit a quarterly certification to the Commission stating, among other
information, that the provider is making any required USF contributions.[72]  Each quarterly certification is
due no later than the last day of the subsequent quarter.[73]  As with other forms, failures to file prepaid
calling card certifications constitute continuing violations until the violations are cured.[74]

21.      Since commencing its operations in January 2010, PTT has late filed 15 separate
quarterly prepaid calling card certifications, and the certification for a sixteenth quarter (the first quarter
of 2014) has not yet been filed.  Indeed, the Commission did not receive PTT's first 14 quarters of
certifications until December 18, 2013.[75]  This was more than eight months after April 12, 2013, the date
PTT acknowledged receipt of the Bureau's *LOI* investigating the Company's compliance with Section
64.5001(c).[76]  Based on the preponderance of the evidence, we therefore find that PTT apparently violated
Section 64.5001(c) by willfully or repeatedly failing to timely file its prepaid calling card certifications.

(Continued from previous page) ———————————
*September 16, 2011*, Public Notice, 26 FCC Rcd 13029 (2011); *see also* E-mail from Ann Monahan, Financial
Management Specialist, Office of the Managing Director, FCC, to Robert Krinsky, Attorney Advisor, Investigations
and Hearings Division, FCC Enforcement Bureau (Nov. 25, 2013, 15:04 EST) (stating that PTT's FY2013
regulatory fee payment of $9,031.00 was due and paid on September 20, 2013).

[70] *See* E-mail from Ann Monahan, Financial Management Specialist, Office of the Managing Director, FCC, to
Robert Krinsky, Attorney Advisor, Investigations and Hearings Division, FCC Enforcement Bureau (July 21, 2014,
11:18 EDT) (providing PTT regulatory fee data from the FCC Fee Filer database) (on file in EB-IHD-13-00011669).

[71] *See* 47 C.F.R. §§ 1.1154, 1.1157(b)(1).

[72] 47 C.F.R. § 64.5001(c).  In 2013, the Commission forbore in part from Section 64.5001, but specified that prepaid
calling card providers that do not have a two-year track record of timely filing their Telecommunications Reporting
Worksheets remain subject to Section 64.5001(c).  *See Petition of USTelecom for Forbearance Under 47 U.S.C.
§ 160(c) from Enforcement of Certain Legacy Telecommunications Regulations*, Memorandum Opinion and Order
and Report and Order and Further Notice of Proposed Rulemaking and Second Further Notice of Proposed
Rulemaking, 28 FCC Rcd 7627, 7706-09, paras. 178–187 (2013) (*USTelecom Forbearance Order*).

[73] *See OMB Approves Prepaid Calling Card Order Reporting and Certification Rules; All Requirements Now
Effective*, Public Notice, 22 FCC Rcd 2465 (Wireline Comp. Bur. 2007).

[74] *See, e.g.*, *Unipoint NAL*, 27 FCC Rcd at 12758, para. 14 (annual Telecommunications Reporting Worksheets); *id.*
at 12759, para. 16 (international telecommunications traffic reports).

[75] *See* FCC, Electronic System Comment Filing (ECFS) database, Proceeding Number 05-68, Filer PTT Phone
Cards, Inc., available at http://apps.fcc.gov/ecfs/comment_search/execute?proceeding=05-
68&applicant=Ptt+phone+cards+&author=&disseminated.minDate=&disseminated.maxDate=&recieved
.minDate=8%2F15%2F13&recieved.maxDate=&dateCommentPeriod.minDate=&dateCommentPeriod.maxDate=&
dateReplyComment.minDate=&dateReplyComment.maxDate=&address.city=&address.state.stateCd=&address.zip
=&daNumber=&fileNumber=&bureauIdentificationNumber=&reportNumber=&submissionTypeId=&__checkbox_
exParte=true (last visited Aug. 15, 2014); *LOI supra* note 7 at Inquiry 33.

[76] *LOI supra* note 7 at 1.

**G.    PTT Apparently Failed to Timely File International Traffic and Revenue Reports**

22.    We conclude that PTT apparently violated Section 43.61(a) of the Rules by willfully or repeatedly failing to file international traffic and revenue reports.  That rule requires common carriers that provide international telecommunications services to file reports with the Commission containing data on overseas traffic.[77]  These reports are due not later than July 31 of each year and must include specified traffic and revenue data pertaining to the carrier's international telecommunications services provided in the preceding calendar year.[78]  Failures to timely file international telecommunications traffic reports constitute continuing violations until the violations are cured.[79]

23.    The Commission's records indicate that PTT failed to file its 2011, 2012, 2013, and 2014 international telecommunications traffic reports (providing calendar year 2010, 2011, 2012, 2013 data, respectively) in a timely manner.  PTT was obligated to submit these reports by July 31 of each year they were due.  PTT, however, did not file its 2011, 2012, and 2013 reports until February 20, 2014, and the Company did not file its 2014 report until August 5, 2014.  These respective dates are roughly 10 months and 16 months after April 12, 2013, the date PTT acknowledged receipt of the Bureau's *LOI* investigating the Company's compliance with Section 43.61(a).[80]  Based on a preponderance of the evidence, we therefore conclude that PTT apparently violated Section 43.61 of the Rules by willfully or repeatedly failing to timely file its 2011, 2012, 2013, and 2014 international telecommunications traffic reports.

**H.    PTT Apparently Failed to Timely File CPNI Certifications**

24.    We also conclude that PTT apparently violated Section 64.2009(e) of the Rules by willfully or repeatedly failing to timely file its annual CPNI certifications.  In the course of providing prepaid calling card services, PTT collects personal information relating to its customers' calling practices, such as the number of calls a customer makes, the type of services the customer subscribes to, the destination or numbers called by a customer, the location (i.e., where the customer is calling from), and information contained in a subscriber's bills.  The Act defines this information as CPNI.[81]  Section 222 of the Act imposes the general duty on all telecommunications carriers to protect the confidentiality of their subscribers' proprietary information.[82]  The Commission has promulgated rules implementing Section 222.[83]  Specifically, Section 64.2009(e) of the Rules requires, among other things, that carriers establish and maintain systems designed to ensure that they adequately protect their subscribers' CPNI and file with the Commission annually, on or before March 1, a certification of their compliance with the

---

[77] 47 C.F.R. § 43.61(a).

[78] *Id.*

[79] *Unipoint NAL*, 27 FCC Rcd at 12759, para. 16.

[80] *See* Letter from Alonzo Beyene, Industry Assurance Consulting, Inc., Consultant to PTT Phone Cards, Inc., to Marlene H. Dortch, Secretary, FCC (filed Feb. 20, 2014) (re:  Submission of Traffic Report for CY 2010, CY 2011 and CY 2012) (on file in EB-IHD-13-00011669); *LOI supra* note 7 at Inquiry 24; *Apr. 12, 2013 U.S. Postal Receipt supra* note 21.

[81] CPNI is defined as "(A) information that relates to the quantity, technical configuration, type, destination, location, and amount of use of a telecommunications service subscribed to by any customer of a telecommunications carrier, and that is made available to the carrier by the customer solely by virtue of the carrier-customer relationship; and (B) information contained in the bills pertaining to telephone exchange service or telephone toll service received by a customer of a carrier." 47 U.S.C § 222(h)(1).

[82] *See* 47 U.S.C § 222.

[83] 47 C.F.R. §§ 64.2001–2011.

CPNI rules.[84]  The Commission has determined that the failure to file a CPNI certification is a continuing violation, which is not cured until the certification is filed with the Commission.[85]

25.       The Commission's records indicate that PTT failed to file its annual CPNI certifications for 2011, 2012, 2013, and 2014 covering PTT's CPNI policies and actions in 2010, 2011, 2012, and 2013, respectively.[86]  Although PTT's annual certification was due March 1 of each year, PTT did not file its certifications for 2011, 2012, and 2013 until April 16, 2013.[87]  This was after PTT learned that the Commission was investigating the Company's potential violation of this requirement.[88]  These three filings were respectively more than 25 months late, more than 13 months late, and 46 days late.  PTT also did not file its 2014 certification, which was due March 1, 2014, until April 15, 2014.[89]  Based on a preponderance of the evidence, we therefore conclude that PTT apparently violated Section 64.2009(e) of the Rules by willfully or repeatedly failing to timely file its annual CPNI certifications.

## IV.     PROPOSED FORFEITURES

26.       Section 503(b)(1)(B) of the Act provides that any person who willfully or repeatedly fails to comply substantially with the terms and conditions of any license, or willfully or repeatedly fails to comply with any of the provisions of the Act or of any rule, regulation, or order issued by the Commission thereunder, shall be liable for a forfeiture penalty.[90]  Section 312(f)(1) of the Act defines willful as "the conscious and deliberate commission or omission of [any] act, irrespective of any intent to violate" the law.[91]  The legislative history to Section 312(f)(1) of the Act clarifies that this definition of willful applies to both Section 312 and 503(b) of the Act,[92] and the Commission has so interpreted the term in the Section 503(b) context.[93]  The Commission may also assess a forfeiture for violations that are

---

[84] 47 C.F.R. § 64.2009(e); *see also, e.g., Enforcement Advisory No. 2011-02, Telecommunications Carriers and Interconnected VoIP Providers Reminded of Requirement to File Annual Reports Certifying Compliance with Commission Rules Protecting Customer Proprietary Network Information,* Public Notice, 26 FCC Rcd 650 (Enf. Bur. 2011).

[85] *USA Teleport, Inc.,* Order on Review, 28 FCC Rcd 525, 530 n.41 (2013) (*USA Teleport Review Order*);

[86] *See* Letter from Alonzo Beyene, Industry Assurance Consulting, Inc., Regulatory Analyst on behalf of PTT Phone Cards, Inc., to Marlene H. Dortch, Secretary, FCC (filed Apr. 16, 2013) (re: EB Docket No. 06-36, CPNI Certification due March 1, 2011 (FY 2010 operations)) (on file in EB-IHD-13-00011669) (*2011 CPNI Filing*); Letter from Alonzo Beyene, Industry Assurance Consulting, Inc., Regulatory Analyst on behalf of PTT Phone Cards, Inc., to Marlene H. Dortch, Secretary, FCC (filed Apr. 16, 2013) (re: EB Docket No. 06-36, CPNI Certification due March 1, 2012 (FY 2011 operations)) (on file in EB-IHD-13-00011669) (*2012 CPNI Filing*); *See* Letter from Alonzo Beyene, Industry Assurance Consulting, Inc., Regulatory Analyst on behalf of PTT Phone Cards, Inc., to Marlene H. Dortch, Secretary, FCC (filed Apr. 16, 2013) (re: EB Docket No. 06-36, CPNI Certification due March 1, 2013 (FY 2012 operations)) (on file in EB-IHD-13-00011669) (*2013 CPNI Filing*); FCC, CPNI Data Base, *available at* http://apps.fcc.gov/eb/CPNI (record of PTT's 2014 CPNI filing is available by searching the CPNI database according to PTT's filer ID number) (last visited June 9, 2014) (on file in EB-IHD-13-00011669) (*2014 CPNI Filing*).

[87] *See 2011 CPNI Filing; 2012 CPNI Filing; 2013 CPNI Filing.*

[88] *See LOI supra* note 7 at Inquiry 34.

[89] *See 2014 CPNI Filing supra* note 86.

[90] *See* 47 U.S.C. § 503(b)(1)(B).

[91] *See* 47 U.S.C. § 312(f)(1).

[92] *See* H.R. Rep. No. 97-765, 97th Cong. 2d Sess. 51 (1982).

[93] *See, e.g., Southern California Broadcasting Co.,* Memorandum Opinion and Order, 6 FCC Rcd 4387, 4388, para. 5 (1991) (*Southern California Broadcasting*).

merely repeated, and not willful.[94]  "Repeated" means that the act was committed or omitted more than
once, or lasts more than one day.[95]  To impose such a forfeiture penalty, the Commission must issue a
notice of apparent liability, and the person against whom the notice has been issued must have an
opportunity to show, in writing, why no such forfeiture penalty should be imposed.[96]  The Commission
will then issue a forfeiture if it finds based on the evidence, that the person or entity has violated the Act,
or any rule, regulation, or order issued by the Commission.[97]

      27.     As set forth above, we conclude that PTT is apparently liable for forfeitures for willfully
or repeatedly providing international telecommunications services without authority under Section 214(a)
of the Act, and for failing to timely file annual Worksheets, timely make required TRS and LNP
contributions, timely pay required regulatory fees, and timely file prepaid calling card certifications,
international traffic and revenue reports, and CPNI certifications.[98]  Based on the facts and circumstances
before us, we therefore find that PTT is apparently liable for forfeiture penalties totaling four hundred
ninety-three thousand, three hundred twenty-seven dollars ($493,327).

     **A.**     **Providing International Telecommunications Services Without Commission
Authority**

      28.     We conclude that for more than 41 months, PTT apparently provided international
telecommunications services without Commission authority in violation of Section 214 of the Act and
Section 63.18 of the Rules.[99]  We find that this apparent violation of the Act and Rules was willful or
repeated.  Given the language of the Act[100] and the Commission's Rules and decisions,[101] further
buttressed by the Commission's website,[102] it should have been apparent to PTT that it was required to
obtain Section 214 authority from the Commission prior to providing international telecommunications
service.[103]

      29.     We view PTT's apparent failure to obtain international Section 214 authority prior to
providing international telecommunications services as a serious dereliction of its responsibilities under
the Act and Rules.  The Commission requires applications for international Section 214 authority so,
among other things, the Commission can screen applications for risks to competition, particularly in

---

[94] *See, e.g.*, *Callais Cablevision, Inc.*, Notice of Apparent Liability for Monetary Forfeiture, 16 FCC Rcd 1359,
1362, para. 10 (2001) (*Callais Cablevision*) (issuing an NAL for, *inter alia*, a cable television operator's repeated
violation of the cable signal leakage rules).

[95] *Southern California Broadcasting, Inc.*, 6 FCC Rcd at 4388, para. 5; *Callais Cablevision*, 16 FCC Rcd at 1362,
para. 9.

[96] *See* 47 U.S.C. § 503(b); 47 C.F.R. § 1.80(f).

[97] *See, e.g.*, *SBC Communications, Inc.*, Forfeiture Order, 17 FCC Rcd 7589, 7591, para. 9.

[98] *See* 47 U.S.C. §§ 214 (a), 222, 251(e)(2); 47 C.F.R. §§ 1.1154, 1.1157, 43.61, 52.32, 54.711, 63.18,
64.604(c)(5)(iii), 64.2009(e), 64.5001(c)(3).

[99] *See supra* paras. 7–9.

[100] *See* 47 U.S.C. § 214(a).

[101] *See, e.g.*, 47 C.F.R. §§ 63.12, 63.18, 63.20, 63.21, 63.23; *see also 1998 International Biennial Review Order*, 14
FCC Rcd 4909; *Regulation of International Common Carrier Services*, Report and Order, 7 FCC Rcd 7331 (1992).

[102] For example, the Commission's website has a list of frequently asked questions about Section 214 applications
for providers of international telecommunications services.  Among the questions and answers are the following:
"Question 7:  If I am merely reselling the international service of another carrier, do I have to file a Section 214
application?  Answer:  Yes, including in the case of mobile international services.  Refer to 47 C.F.R. § 63.18(e)(2),
global resale service."  *See* "Frequently Asked Questions (FAQs)," *available at*
http://transition.fcc.gov/ib/pd/pf/214faq.html (last visited Aug. 14, 2014).

[103] *See Unipoint NAL*, 27 FCC Rcd at 12760, para. 18.

situations where the applicant has an affiliation with a foreign carrier with market power on the foreign end of the route that may be able to leverage that market power to discriminate against U.S. competitors to the detriment of U.S. consumers.[104] International telecommunications carriers that operate without Section 214 authority thus may endanger important public interests.[105] Consistent with Commission precedent, we find that PTT is apparently liable for a forfeiture of one hundred thousand dollars ($100,000) for its willful or repeated failure to obtain international Section 214 authority from the Commission prior to providing international telecommunications service.[106]

**B.      Failure to Timely File Annual Telecommunications Reporting Worksheets**

30.      We conclude that PTT failed to timely file its annual Telecommunications Reporting Worksheets for 2011, 2012, and 2013 in apparent violation of Sections 52.32(b), 54.711, and 64.604(c)(5)(iii)(B) of the Rules.[107] This failure constitutes a serious dereliction of PTT's responsibilities under our Rules. The fund Administrators and the Commission rely on the data in annual Worksheets to determine the amounts, if any, that telecommunications service providers, among others, owe for USF, TRS, LNP, and NANP contributions and regulatory fees.[108] PTT's failure to timely file its annual Worksheets for 2011, 2012, and 2013 thus had serious implications for the administration of important Commission programs. In the past, the Commission has proposed a forfeiture of $50,000 for each failure to file an annual Worksheet.[109] Accordingly, consistent with this precedent, we find that PTT is apparently liable for a forfeiture of one hundred fifty thousand dollars ($150,000) for willful or repeated failure to timely file its annual Worksheets for 2011, 2012, and 2013.

**C.      Nonpayment and Late Payment of TRS Contributions**

31.      We conclude that PTT apparently violated Section 225 of the Act and Section 64.604(c)(5)(iii) of the Rules by willfully or repeatedly failing to timely make required TRS contributions for the 2011–2012, 2012–2013, and 2013–2014 TRS contribution periods.[110] Where a provider fails to meet its obligation to contribute to the TRS Fund over an extended period, it impedes the Commission's efforts to ensure that "telecommunications relay services are available, to the extent possible and in the most efficient manner, to hearing-impaired and speech-impaired individuals in the United States," as Section 225(b)(1) of the Act directs.[111] The Commission has established a base forfeiture amount of

---

[104] *See 1998 International Biennial Review Order,* 14 FCC Rcd at 4914–16, paras. 14–16; *Personal Communications Industry Ass'n's Broadband Personal Communications Service Alliances Petition for Forbearance for Broadband Personal Communications Services,* Memorandum Opinion and Order and Notice of Proposed Rulemaking, 13 FCC Rcd 16857, 16882–83, para. 50 (1998).

[105] *See 1998 International Biennial Review Order,* 14 FCC Rcd at 4915–16, paras. 15–18; *id.* at 4939–40, paras. 72–74.

[106] *See, e.g., Starfone Forfeiture Order,* 29 FCC Rcd at 5674–75, para. 21 (assessing a $100,000 forfeiture against a prepaid calling company for providing unauthorized international telecommunications services); *Unipoint Forfeiture Order,* 29 FCC Rcd at 1643, para. 32 (2014) (same); *ADMA Telecom, Inc.,* Forfeiture Order, 26 FCC Rcd 4152, 4161–62, paras. 26–27 (2011) (*ADMA Forfeiture Order*) (same).

[107] *See supra* paras. 10–11.

[108] 47 C.F.R. §§ 1.1154, 1.1157, 52.17(a), 52.32, 54.711, 64.604(c)(5)(iii).

[109] *Unipoint Forfeiture Order,* 29 FCC Rcd at 1643, para. 32 (assessing a $50,000 forfeiture for failure to timely file one annual Worksheet); *ADMA Forfeiture Order,* 26 FCC Rcd at 4155, 4162, paras. 9, 28 (assessing a $150,000 forfeiture for failure to timely file three Worksheets); *Globcom, Inc.,* Order of Forfeiture, 21 FCC Rcd 4710, 4720–21, 4727, paras. 26–28, 31, 45 (2006) (*Globcom Forfeiture Order*) (assessing a $150,000 forfeiture for failure to timely file Worksheets on three occasions).

[110] *See supra* paras. 12–15.

[111] 47 U.S.C. § 225(b)(1); *see Unipoint NAL,* 27 FCC Rcd at 12760, para. 21.

$10,000 for each instance in which a contributor fails to make required TRS Fund contributions.[112]  Thus, we propose a base forfeiture of thirty thousand dollars ($30,000) for PTT's failure to pay its TRS Fund contributions for the 2011–2012, 2012–2013, and 2013–2014 TRS contribution periods.

32.    As stated above,[113] PTT's unpaid TRS obligations totaled $46,653.25 at the time that the Company entered into its payment agreement with the Treasury Department.  The Commission has previously upwardly adjusted forfeitures for failure to make TRS payments based on a percentage of one half of the Company's unpaid TRS balance.[114]  Consistent with that practice, we propose an upward adjustment of $23,327 for PTT's apparent nonpayment violations, taking into account all the factors enumerated in Section 503(b)(2)(E) of the Act.  Accordingly, we find PTT apparently liable for a total proposed forfeiture of fifty-three thousand, three hundred twenty-seven-dollars ($53,327) for its apparent willful and repeated failures to timely contribute to the TRS Fund.

**D.     Late Payment of LNP Contributions**

33.    We conclude that PTT apparently violated Section 251(e)(2) of the Act and Section 52.32 of the Rules by willfully or repeatedly failing to make payments to the LNP cost recovery mechanism in both the July 2011–June 2012 and July 2012–June 2013 billing cycles, and by failing to timely pay its LNP contribution obligations during the July 2013–June 2014 billing cycle.[115]  Failure to make payments to the LNP cost recovery mechanism undermines our ability to promote consumer choice and competition in the telecommunications marketplace.[116]  The Commission has established a base forfeiture of $10,000 for each year in which there is a failure to timely make required LNP contributions.[117]  We therefore find PTT apparently liable for a forfeiture of thirty thousand dollars ($30,000) for its willful or repeated LNP contribution failures in connection with the July 2011–June 2012, July 2012–June 2013, and July 2013–June 2014 billing cycles.

**E.     Late Payment of Regulatory Fees**

34.    We conclude that PTT apparently violated Sections 1.1154 and 1.1157(b)(1) of the Rules by willfully or repeatedly failing to make regulatory fee payments for fiscal years 2011 and 2012.[118]  A carrier's failure to contribute toward the costs of certain regulatory activities from which it benefits undermines the efficiency, equitability, and effectiveness of the regulatory fee program and accomplishment of Congress' objectives in Section 9(a)(1) of the Act.  The Commission has established a base forfeiture amount of $10,000 for failure to timely make required regulatory fee payments for one calendar year.[119]  Therefore, we find PTT is apparently liable for a forfeiture of twenty thousand dollars ($20,000) for its willful or repeated failure to make full regulatory fee payments for fiscal years 2011 and 2012.

---

[112] See, e.g., Starfone NAL, 27 FCC Rcd at 4402, para. 26; ADMA NAL, 24 FCC Rcd at 853, para. 35; Globcom, Inc. d/b/a Globcom Global Communications, Notice of Apparent Liability for Forfeiture and Order, 18 FCC Rcd 19893, 19904, para. 29 (2003) (Globcom NAL), forfeiture issued, Order of Forfeiture, 21 FCC Rcd 4710 (2006).

[113] See supra para. 15.

[114] See id.

[115] See supra para. 17.

[116] See Telephone Number Portability, Third Report and Order, 13 FCC Rcd at 11701, 11702, para. 3 (2008).

[117] See, e.g., Kajeet Inc. and Kajeet/Airlink, LLC, Notice of Apparent Liability for Forfeiture and Order, 26 FCC Rcd 16684, 16695, para. 24 (2011); Telrite Corporation, Notice of Apparent Liability for Forfeiture and Order, 23 FCC Rcd 7231, 7245, para. 34 (2008).

[118] See supra para. 18.

[119] See, e.g., Starfone NAL, 27 FCC Rcd at 4402, para. 27; Compass Global Inc., Notice of Apparent Liability for Forfeiture, 23 FCC Rcd 6125, 6141–42, para. 38 (2008).

### F.    Failure to Timely File Prepaid Calling Card Certifications

35.     We conclude that PTT apparently violated Section 64.5001(c) of the Rules by willfully or repeatedly failing to timely file prepaid calling card certifications.[120]  Pursuant to Section 1.80(b)(8) of the Rules, the applicable base forfeiture amount for "failure to file required forms or information" certifications is $3,000 per violation.[121]

36.     The Commission's records show that PTT failed to timely file its annual prepaid calling card certifications for 16 quarters.[122]  PTT did not file the first 14 of these certifications — covering the first quarter of 2010 (due June 30, 2010) through the second quarter of 2013 (due September 30, 2013) — until December 13, 2013.[123]  PTT also late filed its certifications for the fourth quarter of 2013, and it has not yet filed its certification for the first quarter of 2014, which was due June 30, 2014.[124]  Given this filing record, we find that the Company is apparently liable for a forfeiture of forty-eight thousand dollars ($48,000) for willful or repeated failures to timely file its USF compliance certifications for 16 quarters from the first quarter of 2010 through the first quarter of 2014.

### G.    Failure to Timely File International Traffic and Revenue Reports

37.     We conclude that PTT apparently violated Section 43.61 of the Rules by willfully or repeatedly failing to timely file its 2011, 2012, 2013, and 2014 international telecommunications traffic reports providing data for calendar years 2010, 2011, 2012, and 2013.[125]  The Commission has held that the data it receives through international telecommunications traffic reports are "invaluable" to the discharge of essential regulatory tasks, including "evaluating applications for international facilities, considering facility planning options, monitoring the development and competitiveness of each international market, formulating policies consistent with the public interest and gauging the competitive impact of [its] decisions on the market."[126]  Failure to timely file international telecommunications traffic reports impedes the work of the Commission and hampers the discharge of its obligations under the Act.  The Commission's *Forfeiture Policy Statement* and implementing Rules prescribe a base forfeiture of $3,000 for failure to file required forms or information, and the Commission has applied that base forfeiture amount to international traffic and revenue reports.[127]  Therefore, we find PTT is apparently liable for a forfeiture of twelve thousand dollars ($12,000) for its willful or repeated failure to timely file international telecommunications traffic reports for four separate years.

---

[120] *See supra* paras. 20–21.

[121] *See* 47 C.F.R. § 1.80(b), Note to Paragraph (b)(8), Section I. Base Amounts for Section 503 Forfeitures.

[122] *See supra* para. 21.

[123] *See id.*

[124] *See id.*

[125] *See supra* para. 37.

[126] *Amendment of Section 43.61 of the Commission's Rules to Update and Simplify the Required Traffic Data Reports Filed by International Telecommunications Carriers*, Report and Order, 100 FCC 2d 578, 580, paras. 1, 7 (1985); *see also Unipoint NAL*, 27 FCC Rcd at 12759, para. 16; *Reporting Requirements for U.S. Providers of International Telecommunications Services – Amendment of Part 43 of the Commission's Rules*, First Report and Order and Further Notice of Proposed Rulemaking, 26 FCC Rcd 7274, 7275–76, paras. 1–2 (2011) (concluding that the Commission should continue to require U.S. providers of international telecommunications services to report information on their international telecommunications traffic).

[127] *See Unipoint NAL*, 26 FCC Rcd at 12762, para. 22; *Commission's Forfeiture Policy Statement and Amendment of Section 1.80 of the Rules to Incorporate the Forfeiture Guidelines*, Report and Order, 12 FCC Rcd 17087, 17113 (1997) (*Forfeiture Policy Statement*), *recons. denied*, 15 FCC Rcd 303 (1999); 47 C.F.R. § 1.80(b), Note to paragraph (b)(6) "Section I. Base Amounts for Section 503 Forfeitures."

Federal Communications Commission                              FCC 14-135

### H.    Failure to Timely File CPNI Certifications

38.    Finally, we conclude that PTT apparently violated Section 222 of the Act and Section 64.2009(e) of the Rules by willfully or repeatedly failing to timely file its annual CPNI certifications.[128] PTT's apparent violations of Section 222(c) and Section 64.2009(e) constitute a serious breach of federal privacy protections. Failure to file the annual CPNI certification jeopardizes the Commission's ability to effectively monitor and respond to violations of consumers' privacy. The annual certification filing obligation is specifically intended to "ensure that carriers regularly focus their attention on their duty to safeguard CPNI" and allow the Commission to "monitor the industry's response to CPNI privacy issues and to take any necessary steps to ensure that carriers are managing customer CPNI securely."[129] In prior decisions, the Commission has affirmed the Bureau's decision to assess a $20,000 forfeiture for a failure to timely file a CPNI certification.[130]

39.    We follow this precedent here. As stated above, PTT apparently has never timely filed a CPNI certification.[131] This lack of timeliness encompasses the CPNI certification for 2013—which was due on March 3, 2014, but not filed until April 15, 2014—as well as the certifications for 2010, 2011, and 2012—respectively due in March 2011, March 2012, and March 2013, but not filed until April 16, 2013.[132] Given PTT's apparent pattern of noncompliance with CPNI certification requirements and the importance of the CPNI rules to protecting the privacy of consumer personal information held by telecommunications carriers, we find that PTT is apparently liable for a forfeiture of eighty thousand dollars ($80,000) for its willful or repeated failure to timely file CPNI certifications for 2011, 2012, 2013, and 2014. This amount reflects a proposed forfeiture of $20,000 for each of PTT's four violations of the CPNI certification requirement.

### V.    CONCLUSION

40.    In view of the seriousness, duration, and scope of PTT's apparent violations, we propose forfeitures totaling four hundred ninety-three thousand, three hundred twenty-seven dollars ($493,327) against PTT, consisting of one hundred thousand dollars ($100,000) for providing international telecommunications service without authorization; one hundred fifty thousand dollars ($150,000) for failure to timely file annual Telecommunications Reporting Worksheets; fifty-three thousand, three hundred twenty-seven dollars ($53,327) for nonpayment and late payment of TRS contributions; thirty thousand dollars ($30,000) for late payment of LNP contributions; twenty thousand dollars ($20,000) for failure to timely pay required regulatory fees; forty-eight thousand dollars ($48,000) for failure to timely file USF compliance certifications; twelve thousand dollars ($12,000) for failure to timely file international telecommunications traffic reports; and eighty thousand dollars ($80,000) for failure to timely file CPNI certifications.

### VI.    ORDERING CLAUSES

41.    Accordingly, **IT IS ORDERED**, pursuant to Section 503(b) of the Communications Act of 1934, as amended, 47 U.S.C. § 503(b), and Section 1.80 of the Commission's rules, 47 C.F.R. § 1.80, that PTT Phone Cards, Inc. is hereby **NOTIFIED** of this **APPARENT LIABILITY FOR**

---

[128] 47 U.S.C. § 222; 47 C.F.R. § 64.2009(e); *see Implementation of the Telecommunications Act of 1996: Telecommunications Carriers' Use of Customer Proprietary Network Information and Other Customer Information, IP-Enabled Services*, Report and Order and Further Notice of Proposed Rulemaking, 22 FCC Rcd 6927, 6953, para. 51 (2007) (*EPIC CPNI Order*), *aff'd sub nom Nat'l Cable &Telecom. Assoc. v. FCC*, 555 F.3d 996 (D.C. Cir. 2009).

[129] *EPIC CPNI Order*, 22 FCC Rcd at 6953, para. 51.

[130] *See USA Teleport Review Order*, 28 FCC Rcd at 530, paras. 11, 13; *Think 12, Corporation d/b/a Hello Depot*, Order on Review, 27 FCC Rcd 16618, 16621, paras. 12, 14 (2012).

[131] *See supra* para. 25.

[132] *See id.*

**FORFEITURE** in the amount of four hundred ninety-three thousand, three hundred twenty-seven dollars ($493,327) for willful or repeated violations of Sections 214(a), 222, and 251(e)(2) of the Communications Act, 47 U.S.C. §§ 214(a), 222, 251(e)(2), and Sections 1.1154, 1.1157(b)(1), 43.61, 52.32, 54.711, 63.18, 64.604(c)(5)(iii), 64.2009(e), and 64.5001(c)(3) of the Commission's rules, 47 C.F.R. §§ 1.1154, 1.1157(b)(1), 43.61, 52.32, 54.711, 63.18, 64.604(c)(5)(iii), 64.2009(e), 64.5001(c)(3).

42.     **IT IS FURTHER ORDERED** that pursuant to Section 1.80 of the Commission's rules, 47 C.F.R. § 1.80, within thirty (30) calendar days of the release date of this Notice of Apparent Liability for Forfeiture, PTT Phone Cards, Inc. **SHALL PAY** the full amount of the proposed forfeiture or **SHALL FILE** a written statement seeking reduction or cancellation of the proposed forfeiture.

43.     Payment of the forfeiture must be made by check or similar instrument, wire transfer, or credit card, and must include the NAL/Account number and FRN referenced above. PTT Phone Cards, Inc. shall send electronic notification of payment to Terry.Cavanaugh@fcc.gov and to Robert.Krinsky@fcc.gov on the date said payment is made. Regardless of the form of payment, a completed FCC Form 159 (Remittance Advice) must be submitted.[133] When completing the FCC Form 159, enter the Account Number in block number 23A (call sign/other ID) and enter the letters "FORF" in block number 24A (payment type code). Below are additional instructions PTT Phone Cards, Inc. should follow based on the form of payment it selects:

- Payment by check or money order must be made payable to the order of the Federal Communications Commission. Such payments (along with the completed Form 159) must be mailed to Federal Communications Commission, P.O. Box 979088, St. Louis, MO 63197-9000, or sent via overnight mail to U.S. Bank – Government Lockbox #979088, SL-MO-C2-GL, 1005 Convention Plaza, St. Louis, MO 63101.

- Payment by wire transfer must be made to ABA Number 021030004, receiving bank TREAS/NYC, and Account Number 27000001. To complete the wire transfer and ensure appropriate crediting of the wired funds, a completed Form 159 must be faxed to U.S. Bank at (314) 418-4232 on the same business day the wire transfer is initiated.

- Payment by credit card must be made by providing the required credit card information on FCC Form 159 and signing and dating the Form 159 to authorize the credit card payment. The completed Form 159 must then be mailed to Federal Communications Commission, P.O. Box 979088, St. Louis, MO 63197-9000, or sent via overnight mail to U.S. Bank – Government Lockbox #979088, SL-MO-C2-GL, 1005 Convention Plaza, St. Louis, MO 63101.

44.     Any request for making full payment over time under an installment plan should be sent to: Chief Financial Officer — Financial Operations, Federal Communications Commission, 445 12th Street, SW, Room 1-A625, Washington, DC 20554.[134] If PTT Phone Cards, Inc. has questions regarding payment procedures, it can contact the Financial Operations Group Help Desk by phone, 1-877-480-3201, or by e-mail, ARINQUIRIES@fcc.gov.

45.     The response, if any, must be mailed both to the Office of the Secretary, Federal Communications Commission, 445 12th Street, SW, Washington, DC 20554, ATTN: Enforcement Bureau, Investigations and Hearings Division, and to Theresa Z. Cavanaugh, Chief, Investigations and

---

[133] An FCC Form 159 and detailed instructions for completing the form may be obtained at http://www.fcc.gov/Forms/Form159/159.pdf.

[134] *See* 47 C.F.R. § 1.1914.

Federal Communications Commission                    FCC 14-135

Hearings Division, Enforcement Bureau, Federal Communications Commission, 445 12th Street, S.W., Room 4-C330, Washington, D.C. 20554 and must include the NAL/ Account number referenced in the caption. The written statement shall also be e-mailed to Theresa Z. Cavanaugh at Terry.Cavanaugh@fcc.gov and to Robert B. Krinsky at Robert.Krinsky@fcc.gov.

46.     The Commission will not consider reducing or canceling a forfeiture in response to a claim of inability to pay unless the petitioner submits: (1) federal tax returns for the most recent three-year period; (2) financial statements prepared according to generally accepted accounting practices; or (3) some other reliable and objective documentation that accurately reflects the petitioner's current financial status. Any claim of inability to pay must specifically identify the basis for the claim by reference to the financial documentation submitted.

47.     **IT IS FURTHER ORDERED** that a copy of this Notice of Apparent Liability for Forfeiture shall be sent by Certified Mail Return Receipt Requested and First Class Mail to PTT Phone Cards, Inc.'s attorney, Mr. Raul Magallanes, Esq., Law Offices of Raul Magallanes, P.O. Box 1213, Houston, TX  77549.

FEDERAL COMMUNICATIONS COMMISSION

Marlene H. Dortch
Secretary

11548

Exhibit B

---

Federal Communications Commission                                    FCC 15-162

**Before the**
**Federal Communications Commission**
**Washington, D.C. 20554**

| | | |
|---|---|---|
| In the Matter of | ) | File No.: EB-IHD-13-00011669[1] |
| | ) | NAL/Acct. No.: 201432080040 |
| PTT Phone Cards, Inc. | ) | FRN: 0022611958 |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**FORFEITURE ORDER**

**Adopted: December 2, 2015**                     **Released:  December 7, 2015**

By the Commission:   Commissioner O'Rielly issuing a statement.

## I.   INTRODUCTION

1.     We impose a penalty of $493,327 against PTT Phone Cards, Inc. (PTT or Company) for violating its regulatory obligations as an international telecommunications service provider for more than three years, including failing to register as a provider, file required reports, and make required contributions to public service programs.  PTT argues in its response to the Commission's Notice of Apparent Liability for Forfeiture (*PTT Phone Cards NAL*) that its penalty should be reduced or cancelled based on, among other reasons, the Company's size, its ability to pay, and what it characterizes as good faith efforts to comply with or aid the investigation.  After reviewing the response, we find no basis to cancel, withdraw, or reduce the proposed penalty, and we therefore assess the $493,327 forfeiture proposed in the *PTT Phone Cards NAL.*

## II.   BACKGROUND

2.     PTT is a Pennsylvania corporation that, from January 1, 2010, through early 2014, operated under the trade name Star Pinless as a prepaid calling card services provider reselling international telecommunications services.[2]  In January 2013, the Enforcement Bureau (Bureau) of the Federal Communications Commission (Commission) received information indicating that PTT failed to comply with the obligations of prepaid calling card providers under the Communications Act of 1934, as

---

[1] The investigation began under File No. EB-13-IH-0051 and was subsequently assigned the above-captioned file number. Any future correspondence with the Commission concerning this matter should reflect the above-captioned case number.

[2] *See* Letter from Ayub Amir, President, PTT Phone Cards, Inc., to Robert Krinsky, Attorney Advisor, Investigations and Hearings Division, FCC Enforcement Bureau at Responses to Inquiries 1, 5–6, 18 (Apr. 24, 2013) (on file in EB-IHD-13-00011669) (*LOI Response*); Letter from Ayub Amir, President, PTT Phone Cards, Inc., to Robert Krinsky, Attorney Advisor, Investigations and Hearings Division, FCC Enforcement Bureau at Responses to Supplemental LOI Inquiries 1, 5–6, 18 (July 7, 2014) (on file in EB-IHD-13-00011669) (*Supplemental LOI Response of July 7, 2014*).

amended (Act), and the Commission's rules (Rules).[3]

3.      Following its investigation, the Commission released the *PTT Phone Cards NAL* on September 16, 2014, proposing a forfeiture penalty of $493,327 for PTT's apparent violations, including its failure to register, file required reports, and make required contributions to public service programs.[4]

4.      On October 9, 2014, PTT filed its response.[5] PTT did not dispute the facts underlying seven of the eight violations identified in the NAL.[6] With respect to the apparent failure to make required payments to the Telecommunications Relay Service (TRS) fund, PTT asserts, without providing any factual support, that it is "very possible" that the facilities-based carrier whose services PTT resold satisfied the TRS contributions associated with PTT's prepaid calling card operations.[7] PTT also sought cancellation or a reduction of the forfeiture based on, among other theories, its purported cooperation with the Commission's investigation, the purported small size of the company, an asserted inability to pay the forfeiture, and the Company's history of no prior offenses.[8]

## III.    DISCUSSION

5.      The Commission proposed a forfeiture in accordance with Section 503(b) of the Act,[9] Section 1.80 of the Rules,[10] and the Commission's *Forfeiture Policy Statement.*[11] When we assess forfeitures, Section 503(b)(2)(E) requires that we take into account the "nature, circumstances, extent, and gravity of the violation and, with respect to the violator, the degree of culpability, any history of prior offenses, ability to pay, and such other matters as justice may require."[12] As discussed below, we have fully considered PTT's response to the *NAL*, which includes a variety of legal and factual arguments, but we find each of them unpersuasive. We therefore affirm the $493,327 forfeiture proposed in the *PTT Phone Cards NAL.*

6.      PTT does not dispute our conclusions in the *PTT Phone Cards NAL* that it violated:  (i) Section 214(a) of the Act and Section 63.18 of the Rules by willfully or repeatedly providing international telecommunications services without international Section 214 authority from January 1, 2010, until May 9, 2013; (ii) Sections 52.32(b), 54.711, and 64.604(c)(5)(iii)(B) of the Rules by willfully or repeatedly

---

[3] The *NAL* includes a more complete discussion of the facts and history of this case and is incorporated herein by reference. *See PTT Phone Cards, Inc.*, Notice of Apparent Liability for Forfeiture, 29 FCC Rcd 11531, 11531-32, paras. 2-5 (2014) (*PTT Phone Cards NAL*).

[4] *Id.* at 11532-41, paras. 6-25.

[5] *See* Raul Magallanes, Esq., The Law Offices of Raul Magallanes, PLLC, Counsel to PTT Phone Cards, Inc., Response of PTT Phone Cards, Inc. to Notice of Apparent Liability Requesting Consent Decree Negotiations (Oct. 9, 2014) (on file in EB-IHD-13-00011669) (*PTT NAL Response*).

[6] *See PTT NAL Response.*

[7] *See id.* at 6; *see also Telecommunications Relay Servs. & the Americans with Disabilities Act of 1990*, Third Report and Order, 8 FCC Rcd 5300, 5300, para. 3 (1993). Telecommunications relay services enable persons with hearing and speech disabilities to communicate by telephone with other individuals. Such services provide telephone access to a significant number of Americans who, without it, might not be able to make calls to or receive calls from other users. *See Telecommunications Relay Services and Speech-to-Speech Services for Individuals with Hearing and Speech Disabilities*, Report and Order, 15 FCC Rcd 5140, 5141, 5143, paras. 2, 5 (2000).

[8] *See PTT NAL Response* at 6-9.

[9] 47 U.S.C. § 503(b).

[10] 47 C.F.R. § 1.80.

[11] *The Commission's Forfeiture Policy Statement and Amendment of Section 1.80 of the Rules to Incorporate the Forfeiture Guidelines*, Report and Order, 12 FCC Rcd 17087 (1997) (*Forfeiture Policy Statement*), *recons. denied*, Memorandum Opinion and Order, 15 FCC Rcd 303 (1999).

[12] 47 U.S.C. § 503(b)(2)(E).

failing to timely file annual Telecommunications Reporting Worksheets (FCC Forms 499-A or Worksheets) for 2011, 2012, and 2013; (iii) Section 251(e)(2) of the Act and Section 52.32 of the Rules by willfully or repeatedly failing to make timely payments to the local number portability (LNP) cost recovery mechanism; (iv) Sections 1.1154 and 1.1157(b)(1) of the Rules by willfully or repeatedly failing to timely pay required regulatory fees for fiscal years 2011 and 2012; (v) Section 64.5001(c) of the Rules by willfully or repeatedly failing to timely file prepaid calling card certifications; (vi) Section 43.62(a) of the Rules by willfully or repeatedly failing to file international traffic and revenue reports; and (vii) Section 64.2009(e) of the Rules by willfully or repeatedly failing to timely file its annual Customer Proprietary Network Information (CPNI) certifications.  We therefore affirm our conclusions in the *PTT Phone Cards NAL* with respect to those violations for the reasons set forth in the *PTT Phone Cards NAL.*[13]  PTT only challenges our findings regarding its contributions to the TRS Fund, as well as advancing numerous arguments to support cancellation or reduction of the forfeiture amount.

> **A.     PTT offers no evidence that its TRS obligations were satisfied.**

7.      The Commission concluded that PTT violated Section 225 of the Act and Section 64.604(c)(5)(iii) of the Rules by willfully or repeatedly failing to timely contribute to the TRS Fund.[14]  PTT argues, without supporting evidence, that it might have been treated as an "end-user customer" by Tata Communications, Inc. (Tata), the common carrier through which it purchased international services, and that Tata may have assessed PTT, and PTT may have paid Tata, for an equitable share of its TRS contributions.[15]

8.      The Commission satisfied its burden of demonstrating that PTT was a reseller obligated to make payments to the TRS fund, and that PTT failed to make contributions to the fund.[16]  The burden thus shifts to PTT to offer evidence of contributions, and PTT offers no such evidence in support of its theory that indirect payments "may" have been made through Tata.  PTT alone is responsible for timely meeting its payments obligations to the TRS fund, and it has failed to meet its burden of providing demonstrative evidence that it met this obligation.[17]

> **B.     PTT's other arguments do not support a reduction or cancellation of the forfeiture.**
>
> > **1.     PTT's violations were willful and/or repeated.**

9.      PTT seeks a reduction of the forfeiture amount because its violations were "not conscious or deliberate" and it "did not know it was omitting the various registrations and filings required of common carriers."[18]  As explained in the *NAL*, the Act defines willful as "the conscious and deliberate commission or omission of [any] act, irrespective of any intent to violate" the law.[19]  "Willful" does not require a finding that the rule violations were intentional in the context of a forfeiture action.[20]  Instead, willful "means that the violator knew that it was taking (or in this case, not taking) the action in question, irrespective of any

---

[13] *PTT Phone Cards NAL*, 29 FCC Rcd at 11546, para. 40.

[14] *See* 47 U.S.C. § 225(b)(1); 47 C.F.R. § 64.604(c)(5)(iii).

[15] *See PTT NAL Response* at 6.

[16] *PTT Phone Cards NAL*, 29 FCC Rcd at 11535-37, paras. 12-15.

[17] Moreover, as PTT itself acknowledges, it has "entered into a payment agreement with the Treasury Department" regarding its payment obligations, including the TRS payments. *PTT NAL Response* at 7. PTT's agreement to pay this amount undercuts its theory that the payment may already have been made.

[18] *See PTT NAL Response* at 5.

[19] *PTT Phone Cards NAL*, 29 FCC Rcd at 11541, para. 26 (citing 47 U.S.C. §§ 312(f)(1) & 503(b)(1)(B)).

[20] *Five Star Parking d/b/a Five Star Taxi Dispatch*, Forfeiture Order, 23 FCC Rcd 2649, 2651, para. 6 (Enf. Bur., Spectrum Enf. Div. 2008).

intent to violate the Rules."[21]

10.    PTT contends its violations were the result of third party errors, ignorance of the law through administrative oversight, or staffing challenges,[22] but inadvertent violations remain willful under the Commission's forfeiture policies.[23]  Moreover, PTT's purported ignorance of the law certainly does not excuse the fact that it willfully provided telecommunications services for several years while out of compliance with all of the provisions of the Act and Rules to which it was subject.

### 2.    PTT's small business status is not relevant.

11.    PTT further argues that the forfeiture amount proposed in the *PTT Phone Cards NAL* should be reduced because it is a "woman-owned, minority-owned small business."[24]  PTT does not identify a basis for reduction based on these characteristics nor does it provide meaningful evidence of its status as a small business entity.  Nonetheless, assuming that PTT qualifies for the considerations provided to a small business entity, the Commission's forfeiture policies as applied here comply with the Small Business Regulatory Enforcement Fairness Act (SBREFA).[25]  Indeed, the Commission always specifically considers a small entity's ability to pay along with any good faith efforts by the entity to comply with the law,[26] and it has done so in this action as well.  Thus, the Commission's existing forfeiture policy provides appropriate consideration of PTT's status as a small business entity.

### 3.    Neither PTT's actions after the launch of the investigation nor any "good faith" efforts by the Company provide a basis to reduce the forfeiture.

12.    PTT also offers several examples of what it would characterize as its "good faith" efforts during the course of the investigation as bases for a reduction.[27]  First, PTT seeks a reduction because it took "voluntary actions" to achieve compliance.[28]  We reject PTT's argument that its belated good faith efforts to comply with its obligations is a basis for a reduction cancellation or reduction of the forfeiture amount proposed in the *PTT Phone Cards NAL*.  The Commission expects such efforts from all regulatees as a matter of course.[29]

---

[21] *Id.*

[22] *See PTT NAL Response* at 4-6.

[23] *See Emery Tel.*, Memorandum Opinion and Order, 13 FCC Rcd 23854, 23859, para. 12 (1998), *recon. denied*, 15 FCC Rcd 7181 (1999) ("'[I]nadvertence . . . is at best, ignorance of the law, which the Commission does not consider a mitigating circumstance.'") (internal quotation omitted)); *Cascade Access, LLC*, Forfeiture Order, 28 FCC Rcd 141, 145, para. 9 (Enf. Bur. 2013) (rejecting argument that forfeiture should be reduced because the violation was unintentional); *PJB Communc'ns. of Virg., Inc.*, Memorandum Opinion and Order, 7 FCC Rcd 2088, 2088, para. 5 (1992) (inadvertent violations are "willful" as "[a]ll that is necessary is that the licensee knew it was doing the act in question"); *Standard Communications Corp.*, Memorandum Opinion and Order, 1 FCC Rcd 358, para 4 (1986) (stating that "employee acts or omissions, such as clerical errors in failing to file required forms, do not excuse violations").

[24] *See PTT NAL Response* at 6.

[25] *Forfeiture Policy Statement*, 12 FCC Rcd at 17109, paras. 51-52.

[26] *See e.g., North County Broad. Corp.*, Forfeiture Order, 28 FCC Rcd 1207, 1210, para. 10 (Enf. Bur. Regional Dir., Western Reg. 2013) (assessment of a $4,800 forfeiture against a small broadcaster, for failing to ensure the operational readiness of its Emergency Alert System equipment, that took into account the broadcaster's history of compliance and ability to pay, is consistent with the requirements of the SBREFA).

[27] *See PTT NAL Response* at 7-8.

[28] *Id.*

[29] *See, e.g., In the Matter of Int'l Broad. Corp.*, Order on Review, 25 FCC Rcd 1538, 1539, para. 5 (2010) (The "Commission's long-standing policy[is] that corrective action taken to come into compliance with the Rules is expected and does not nullify or mitigate any prior forfeitures or violations."); *In the Matter of Cesar Chavez*

13.     PTT further argues that the forfeiture amount should be reduced because it is now current in all its payment obligations.[30] As the Commission has made clear, "[a]ll licensees and . . . regulatees are expected to promptly take corrective action when violations are brought to their attention."[31] Thus, becoming current on payment obligations identified in an enforcement action is expected and is no basis for a reduction in the assessed forfeiture. Indeed, PTT did not enter into installment payment plans to make overdue payments for regulatory fees and contributions to the TRS Fund until after the Commission launched its investigation,[32] and payments were not completed until after the release of the *PTT Phone Cards NAL* and payments for past due TRS Fund contributions are ongoing.[33]

14.     PTT also argues that its cooperation with the investigation, including its entry into a tolling agreement with the Bureau, merits a reduced forfeiture amount. In fact, PTT *requested* that the Bureau enter into a tolling agreement in order to provide for time for the possibility of entering into a consent decree settlement of PTT's violations, negotiations which proved unsuccessful.[34] We decline to reduce the forfeiture on this basis, particularly in light of the fact that we expect full cooperation during our investigations and proceedings.[35]

15.     PTT also argues that "[a]side from the violations alleged in the NAL, PTT has no history of prior offenses."[36] However, the violations covered in the *PTT Phone Cards NAL* occurred during the entire period that PTT's operations were subject to Commission oversight, a circumstance which

---

*Found.*, Forfeiture Order, 27 FCC Rcd 5252, 5257, para. 13 (Enf. Bur. 2012) (rejecting argument that "good faith effort at compliance" rendered the forfeiture excessive); *In the Matter of Beacon Broad., Inc.*, Forfeiture Order, 27 FCC Rcd 3211, 3212, para. 4 (Enf. Bur. Regional Dir., Northeast Reg. 2012) (rejecting self-corrective actions as a mitigation of prior violations) ("[T]he Commission expects parties to take . . . corrective action to come into compliance . . . and such action does not nullify or mitigate any prior violations.").

[30] *See PTT NAL Response* at 7.

[31] *AT&T Wireless Services, Inc.*, Forfeiture Order, 17 FCC Rcd 21866, 21875, para. 26 (2002).

[32] On April 8, 2013, the Bureau launched its investigation of PTT with release of its LOI. *See See* Letter from Pamela S. Kane, Deputy Chief, Investigations and Hearings Division, Enforcement Bureau, FCC, to Mr. Ayub Amir, President, PTT Phone Cards, Inc., (dated Apr. 8, 2013) (LOI) (on file in EB-IHD-13-00011669). On September 16, 2014, the Commission released its NAL. *See id.* PTT did not enter into an installment payment plan for past due regulatory fees for fiscal years 2011 and 2012 until August 27, 2014 and did not satisfy its payments until September 22, 2014. *See* E-mail from Ann Monahan, Financial Management Specialist, Office of the Managing Director, FCC, to Robert Krinsky, Attorney Advisor, Investigations and Hearings Division, FCC Enforcement Bureau (May 13, 2014, 3:08 EDT) (on file in EB-IHD-13-00011669).

[33] On February 28, 2014, the TRS Fund Administrator transferred PTT's TRS debt to the U.S. Department of Treasury (Treasury Department).[33] *See* E-mail from Wendy S. Lutz, Accountant, Rolka Loube Saltzer Associates LLC, to David W. Rolka, President, Rolka Loube Saltzer Associates LLC (May 16, 2014, 09:57 EDT) (on file in EB-IHD-13-00011669). Effective April 7, 2014, the Treasury Department and PTT entered into a payment agreement that requires PTT to make monthly installment payments until April 2016. *See* Letter from U.S. Dept. of Treasury, Financial Management Service, Debt Management Services to Ayub Amir, Business Contact, PTT Phone Cards, Inc., Fed Debt Payment Agreement ID Number: PA14017957, Payment Agreement at 1 (dated Apr. 7, 2013) (on file in EB-IHD-13-00011669).

[34] *See* E-mail from Robert Krinsky, Attorney Advisor, Investigations and Hearings Division, FCC Enforcement Bureau, FCC to Ayub Amir, President, PTT Phone Cards, Inc. (Dec. 18, 2013, 5:54 EST) (on file in EB-IHD-13-00011669).

[35] *See, e.g., RB Commc'ns, Inc. d/b/a Starfone*, Forfeiture Order, 29 FCC Rcd 5668, 5672, para. 15 (2014); *Coleman Enters., Inc. d/b/a Local Long Distance, Inc.*, Order of Reconsideration, 16 FCC Rcd 10023, 10027–28, paras. 10–11 (2001) (*Coleman Enters. Order on Recon.*); *4M of Richmond, Inc.*, Forfeiture Order, 19 FCC Rcd 15447, 15452, para. 15 (Enf. Bur. 2004).

[36] *See PTT NAL Response* at 9.

historically has been regarded as having had no history of overall compliance.[37]

> **4.      PTT has not demonstrated that it is unable to pay the forfeiture.**

16.      The Company also claims it is unable to pay the forfeiture amount.[38]  The Commission will not consider reducing or canceling a forfeiture in response to a claimed inability to pay unless the licensee submits:  (1) federal tax returns for the most recent three-year period; (2) financial statements prepared according to generally accepted accounting practices ("GAAP"); or (3) some other reliable and objective documentation that accurately reflects the licensee's current financial status.[39]  In analyzing financial hardship claims, the Commission's long-established standard is to consider a company's gross revenues. The Commission has found that "[i]n general, gross revenues are the best indicator of [a company's] ability to pay a forfeiture."[40]  The Commission has concluded that if "gross revenues are sufficiently great . . . the mere fact that a business is operating at a loss does not itself mean that it cannot afford to pay a forfeiture."[41]

17.      PTT provided financial documentation in an effort to support its argument that it cannot pay the forfeiture amount.[42]  PTT requests the Commission to consider the Company's net, rather than gross, revenues. ██████████████████████████████████ ██████████████████████████████        The Company argues that we should consider net revenue in determining the station's ability to pay the forfeiture.[44]

18.      PTT's documented gross revenues are sufficiently great that a forfeiture reduction is not supported.[45]  The forfeiture amount is well within the established gross revenue standard for ability to pay a forfeiture.[46]  We decline to rely on PTT's net revenues as an alternate standard.  This position is consistent with Commission precedent where losses or other factors have only been considered in cases of severe financial distress.[47]  PTT has not identified any of the circumstances that have led us to look beyond gross

---

[37] *See JMK Communications, Inc.*, Forfeiture Order, 19 FCC Rcd 16111, 16114, para. 11 (Enf. Bur. 2004).

[38] *See PTT NAL Response* at 8-9.

[39] *See, Coleman d/b/a Local Long Distance,* Notice of Apparent Liability for Forfeiture, Order of Forfeiture, 15 FCC Rcd 24385, 24389, para. 11 (2000) (*Coleman Enters. NAL*) (addressing the reliability of financial data presented in federal tax returns in the context of determining ability to pay a forfeiture); *Forfeiture Policy Statement*, 12 FCC Rcd at 17107, para. 44 (acknowledging the "burden and expense" for small businesses of documenting inability to pay a forfeiture by means of audited financial statements and noting the Commission's "flexibility to consider any documentation, not just audited financial statements, that it considers probative, objective evidence of the violator's ability to pay a forfeiture.").

[40] *Unipoint Techs., Inc.*, Forfeiture Order, 29 FCC Rcd 1633, 1643, para. 29 (2014) (citing *PJB Communc'ns. of Virginia, Inc.*, 7 FCC Rcd at 2088, para. 8).

[41] *PJB Communc'ns. of Virg., Inc.*, 7 FCC Rcd at 2089, para. 8; *see also Sunstar Travel & Tours, Inc.*, Forfeiture Order, 25 FCC Rcd 13804, 13808, para. 14 (2010).

[42] *See PTT NAL Response* at 8.

[43] *Id.*

[44] *Id.*

[45] *See Ayustar Corp.*, Memorandum Opinion and Order, 25 FCC Rcd 16249, 16250-51, para. 5 (Enf. Bur. 2010).

[46] *See Coleman Enters. NAL*, 15 FCC Rcd at 24389, para. 11.

[47] *See, e.g., First Greenville Corp.*, Memorandum Opinion and Order and Forfeiture Order, 11 FCC Rcd 7399 (1996), *Benito Rish*, Memorandum Opinion and Order, 10 FCC Rcd 2861 (1995).

revenues in the past.[48]

## IV.    CONCLUSION

19.    After considering the relevant statutory factors and the Commission's *Forfeiture Policy Statement*, we find that PTT is liable for a total forfeiture of $493,327, including one hundred thousand dollars ($100,000) for providing international telecommunications service without authorization; one hundred fifty thousand dollars ($150,000) for failure to timely file annual Telecommunications Reporting Worksheets; fifty-three thousand, three hundred twenty-seven dollars ($53,327) for nonpayment and late payment of TRS contributions; thirty thousand dollars ($30,000) for late payment of LNP contributions; twenty thousand dollars ($20,000) for failure to timely pay required regulatory fees; forty-eight thousand dollars ($48,000) for failure to timely file USF compliance certifications; twelve thousand dollars ($12,000) for failure to timely file international telecommunications traffic reports; and eighty thousand dollars ($80,000) for failure to timely file CPNI certifications.  Weighing the relevant statutory factors and our own forfeiture guidelines, we conclude, based upon the evidence before us, that the proposed forfeiture of $493,327 properly reflects the seriousness, duration, and scope of PTT's violations.

## V.    ORDERING CLAUSES

20.    Accordingly, **IT IS ORDERED** that, pursuant to Section 503(b) of the Act,[49] and Section 1.80 of the Rules,[50] PTT Phone Cards, Inc. **IS LIABLE FOR A MONETARY FORFEITURE** in the amount of four hundred ninety three thousand three hundred twenty seven dollars ($493,327) for willfully and/or repeatedly violating Sections 214(a) and 251(e)(2) of the Act and Sections 1.1154, 1.1157, 43.62, 52.32, 54.711, 63.18, 64.5001, 64.2009, and 64.604 of the Rules.

21.    Payment of the forfeiture shall be made in the manner provided for in Section 1.80 of the Rules within thirty (30) calendar days after the release of this Forfeiture Order.[51]  If the forfeiture is not paid within the period specified, the case may be referred to the U.S. Department of Justice for enforcement of the forfeiture pursuant to Section 504(a) of the Act.[52]

22.    Payment of the forfeiture must be made by check or similar instrument, wire transfer, or credit card, and must include the NAL/Account Number and FRN referenced above.  PTT shall send electronic notification of payment to Jeffrey J. Gee, Chief, Investigations and Hearings Division at Jeffrey.Gee@fcc.gov and Robert B. Krinsky, Attorney-Advisor at Robert.Krinsky@fcc.gov on the date said payment is made.  Regardless of the form of payment, a completed FCC Form 159 (Remittance Advice) must be submitted.[53]  When completing the Form 159, enter the Account Number in block number 23A (call sign/other ID) and enter the letters "FORF" in block number 24A (payment type code).  Below are additional instructions that should be followed based on the form of payment selected:

- Payment by check or money order must be made payable to the order of the Federal Communications Commission.  Such payments (along with completed Form 159) must be mailed to the Federal Communications Commission, P.O. Box 979088, St. Louis, MO 63197-9000, or sent via overnight mail to U.S. Bank – Government Lockbox #979088, SL-MO-C2-GL, 1005 Convention Plaza, St. Louis, MO 63101.

- Payment by wire transfer must be made to ABA Number 021030004, receiving bank

---

[48]*See, e.g., Ayustar Corp.*, 25 FCC Rcd at 16250, para. 5 (internal citation omitted).

[49] 47 U.S.C. § 503(b).

[50] 47 C.F.R. § 1.80.

[51] *Id.*

[52] 47 U.S.C. § 504(a).

[53] An FCC Form 159 and detailed instructions for completing the form may be obtained at http://www.fcc.gov/Forms/Form159/159.pdf.

TREAS/NYC, and Account Number 27000001.  To complete the wire transfer and ensure appropriate crediting of the wired funds, a completed Form 159 must be faxed to U.S. Bank at (314) 418-4232 on the same business day the wire transfer is initiated.

- Payment by credit card must be made by providing the required credit card information on FCC From 159 and signing and dating the Form 159 to authorize the credit card payment. The completed Form 159 must then be mailed to Federal Communications Commission, P.O. Box 979088, St. Louis, MO 63197-9000, or sent via overnight mail to U.S. Bank – Government Lockbox #979088, SL-MO-C2-GL, 1005 Convention Plaza, St. Louis, MO 63101.

23.     Any request for making full payment over time under an installment plan should be sent to:  Chief Financial Officer – Financial Operations, Federal Communications Commission, 445 12th Street, SW, Room 1-A625, Washington, DC 20554.[54]  Questions regarding payment procedures should be directed to the Financial Operations Group Help Desk by telephone, 1-877-480-3201, or by e-mail, ARINQUIRIES@fcc.gov.

24.     **IT IS FURTHER ORDERED** that a copy of this Forfeiture Order shall be sent by first class mail and certified mail, return receipt requested, to PTT's counsel, Raul Magallanes, Esq., The Law Office of Raul Magallanes, PLLC, P.O. Box 1213, Friendswood, Texas, 77546.

FEDERAL COMMUNICATIONS COMMISSION

Marlene H. Dortch
Secretary

---

[54] *See* 47 C.F.R. § 1.1914.

14708

**STATEMENT OF**
**COMMISSIONER MICHAEL O'RIELLY**

*In re:   PTT Phone Cards, Inc., File No. EB-IHD-13-00011669*

I generally support this Forfeiture Order because it is clear that PTT violated a number of our rules. I write simply to question the Commission's perfunctory application of gross revenues as the basis for the forfeiture. In item after item, the Commission cites its "long-established" standard of considering gross revenues. While that may be true, that does not relieve the Commission of its responsibility to give serious and substantive consideration to arguments raised in the record as to why the standard is inappropriate in a given case. Here, the item briefly notes that PTT contended that the Commission should consider its net revenues before summarily dismissing the argument. No attempt is made to rebut the specific points that PTT raised in support of its position.

I have voted for certain Notices of Apparent Liability with the understanding that all counter arguments would be fully considered and addressed at the forfeiture stage. Therefore, it is disappointing to see such a cursory response in a Forfeiture Order. The failure to engage on arguments raised by companies in response to NALs risks leaving the impression that the outcome of an investigation is preordained and a respondent's replies are irrelevant, which shouldn't be the case. Moreover, summarily dismissing concerns about how a fine is calculated could give the appearance that preserving the proposed fine is worth more than setting it at a level that is fully justified and designed to achieve compliance with the rules. While I disagree that monetary penalties should be the focus of the Commission's enforcement process, driving a business to the point of bankruptcy does, in fact, decrease the likelihood of collecting the forfeiture. In this case, the investigation itself prompted PTT to come into compliance. While a fine is certainly warranted, I would have given more consideration to PTT's arguments, albeit not suggesting I would necessarily fully agree per se.

14709

**FEDERAL COMMUNICATIONS COMMISSION**
**WASHINGTON, D.C.**


**CERTIFICATE OF FORFEITURE**


**Violator(s) Name(s) and**          PTT Phone Cards, Inc.
**Address(es):**                     2417 Welsh Road, Suite 231
                                     Philadelphia, PA 19114


**Total forfeiture assessed by FCC as of** September 22, 2016 **in the amount of** $493,327.00.
I certify that Federal Communications Commission records show that the violator named above
has been ordered to pay to the United States the amount stated above.

This claim arose in connection with:

> Notice of Apparent Liability For Forfeiture released September 16, 2014
> Forfeiture Order released December 7, 2015


**CERTIFICATION:** Pursuant to 28 USC § 1746, I certify under penalty of perjury that the
foregoing is true and correct.


_11/10/16_
(Date)

                                     Susan L. Launer
                                     Deputy Associate General Counsel